IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| NOELL DEL ROSSI, *et al.*, | : |
| Plaintiffs, | : |
| v. | : Civil No. 23-3136 (RBK/AMD) |
|  | : **OPINION** |
| FORMAN MILLS, INC., | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendant Forman Mills, Inc.'s ("Defendant" or "Forman Mills") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (the "Motion" or "Mot."). (ECF No. 21). For the reasons set forth below, the Court **DENIES** Defendant's Motion.

I. BACKGROUND

A. Procedural Background

Noell Del Rossi filed her initial Complaint on June 7, 2023, on behalf of herself and a putative class of all those similarly situated. (ECF No. 1). Forman Mills filed a Motion to Dismiss Ms. Del Rossi's Complaint on August 21, 2023. (ECF No. 16). Without seeking leave of Court, Ms. Del Rossi filed an Amended Complaint on September 8, 2023, that added Dawn Barber as a named plaintiff. (ECF No. 20, Am. Compl.). On September 22, 2023, Defendant then filed a Motion to Dismiss Plaintiffs' Amended Complaint, (ECF No. 21), which it supported with separately filed exhibits. (ECF No. 22). Plaintiffs opposed the second Motion to Dismiss on October 6, 2023, (ECF No. 23), and Defendant replied on October 17, 2023. (ECF No. 26).

1

In an Order on February 14, 2024, (ECF No. 27), the Court denied Defendant's first Motion to Dismiss as moot. The Court also denied Defendant's second Motion to Dismiss as moot and converted it into a Motion for Summary Judgment. (*Id.*). Plaintiff opposed the Motion for Summary Judgment in a brief filed on March 6, 2024. (ECF No. 28, Opp'n Br.). Plaintiff's brief was accompanied by a declaration by Ms. Del Rossi (the "Del Rossi Declaration"), (ECF No. 28-2, Del Rossi Decl.), and a declaration by Ms. Barber (the "Barber Declaration"). (ECF No. 28-3, Barber Decl.). Defendant filed a reply brief on March 18, 2024. (ECF No. 29, Reply Br.). Defendant's brief was accompanied by a Statement of Undisputed Material Facts, (ECF No. 29-1, Def.'s SOMF); a certification by Forman Mills' Chief Financial Officer Kevin Hess (the "Hess Certification"), (ECF No. 30 at 1–2, Hess Cert.); and earning statements for the Plaintiffs covering the time period at issue in this litigation. (*Id.* at 3–40, Hess Cert., Exs. A–B).[1]

**B.    Factual Background[2]**

The parties do not dispute the facts of this case, which arises out of the temporary closure of Forman Mills in the spring of 2023.[3] Ms. Barber began working for Forman Mills in July 2013, while Ms. Del Rossi was first hired by the company in September 2021. (Hess Cert. ¶¶ 3–4). Both worked at Forman Mills' corporate office in Pennsauken, New Jersey. (Del Rossi Decl.

---

[1] All citations to specific pages of court documents use the page numbers generated automatically by the ECF system.

[2] These facts are taken from the declarations and attached exhibits submitted by the parties. As discussed more fully below, only evidence "capable of being admissible at trial" may be considered on a motion for summary judgment. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Such evidence may include declarations and supporting documents. *See* Fed. R. Civ. P. 56(c)(1)(A).

[3] *See* (Reply Br. 5) ("After several motions and multiple briefs, the relevant facts are not in dispute.").

¶ 2; Barber Decl. ¶ 2). In total, Forman Mills employed—and still employs—more than 130 people in New Jersey. (Hess Cert. ¶ 2).

On June 6, 2023, Ms. Del Rossi and Ms. Barber were among 120 people at Forman Mills' corporate office who attended a mandatory video conference during which the attendees were informed that their employment was being terminated effective immediately. (*Id*. ¶ 5; Del Rossi Decl. ¶¶ 3–4; Barber Decl. ¶¶ 3–4). Later that day, Ms. Del Rossi and Ms. Barber received an email from Forman Mills' Human Resources Department that contained "Reduction-In-Workforce (RIF) FAQs." (Del Rossi Decl. ¶ 6; Barber Decl. ¶ 5; Del Rossi Decl., Ex. A, RIF Email). The email explained that the employees' positions were eliminated "[b]ased on the economic circumstances and operational needs of the business." (RIF Email at 1). The email also explained when employees would receive their "last paycheck." (*Id*.). It noted that Forman Mills had not filed for bankruptcy and would not pay severance. (*Id*.). Finally, the email provided instructions on how terminated employees could apply for unemployment benefits and continuation of health coverage. (*Id*. at 1–2).

On June 20, 2023, the stock of Forman Mills was sold to a third party. (Hess Cert. ¶ 6). That same day, Ms. Del Rossi, Ms. Barber, and all the other previously terminated employees were informed they could return to work. (*Id*. ¶ 7; Del Rossi Decl. ¶ 11; Barber Decl. ¶ 10). Ms. Del Rossi and Ms. Barber resumed their jobs at Forman Mills the next day, June 21, 2023. (Del Rossi Decl. ¶ 12; Barber Decl. ¶ 12). On June 22, 2023, Forman Mills publicly announced the sale of the company. (Hess Cert. ¶ 12).

Forman Mills evidently paid all the previously terminated employees for the two weeks they were out of work. "All employees, including Ms. Del Rossi and Ms. Barber[,] experienced no gap in pay or benefits before, on, or after June 6, 2023, and have experienced no loss of

3

seniority." (*Id*. ¶ 8). Plaintiffs do not dispute this assertion, and Forman Mills submitted as exhibits attached to the Hess Certification earning statements for Ms. Del Rossi and Ms. Barber that show uninterrupted pay. (*Id.*, Exs. A–B). As of the time Forman Mills filed its reply brief, Ms. Del Rossi and Ms. Barber remained employees of Forman Mills. (*Id*. ¶ 9).

Ms. Del Rossi and Ms. Barber allege as part of a putative class that Forman Mills violated federal and New Jersey law by failing to provide adequate notice before terminating them. (Am. Compl. ¶¶ 19–20). They bring two counts in their Amended Complaint: (1) a violation of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et. seq.*, which requires employers to provide employees with sixty days' notice in the event of a "plant closing" or "mass layoff," *id*. § 2102; and (2) a violation of the New Jersey Millville Dallas Airmotive Plant Job Loss Notification Act ("New Jersey WARN Act"), N.J. Stat. Ann. § 34:21-1 *et seq*., which requires employers to provide employees with ninety days' notice in the event of a "transfer of operations," "termination of operations," or "mass layoff," *id*. § 34:21-2. (Am. Compl. ¶¶ 26–47). Ms. Del Rossi and Ms. Barber seek back pay, severance pay, and other damages provided for in the federal and state statutes. (*Id*. at 9).

## II.   LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of any "genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). The party may satisfy its burden by "produc[ing] evidence

showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), and credibility determinations are for the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Only evidence "capable of being admissible at trial" may be considered on a motion for summary judgment. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Federal Rule of Civil Procedure 56(c) directs that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions,

5

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Assertions in briefs are not record evidence unless agreed to by the adverse party. *Dabone v. Thornburgh*, 734 F. Supp. 195, 199 (E.D. Pa. 1990) (citing *Braden v. University of Pittsburgh*, 477 F.2d 1, 6 (3d Cir. 1973)); *see also Lassoff v. New Jersey*, 2007 WL 2156360, at *2 (D.N.J. July 25, 2007) ("Bald assertions in briefs are not facts and will not defeat summary judgment."). Further, a declaration used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III.   DISCUSSION

Defendant is not entitled to summary judgment on Plaintiffs' claims. Because the parties agree on the relevant facts, there is no genuine dispute as to any material fact in this case. *See* Fed. R. Civ. P. 56(a). However, to prevail on a summary judgment motion, the movant must also be "entitled to judgment as a matter of law." *Id*. The Court finds that, contrary to Defendant's contentions, Plaintiffs *did* experience an employment loss that triggers liability under the federal and state WARN Acts. Further, Plaintiffs are entitled to statutory damages under both Acts even though they never missed a paycheck.

### A.   Federal WARN Act Claim

"The WARN Act protects workers, their families and their communities by requiring that employers subject to the Act provide notice sixty calendar days before a plant closing or mass layoff." *Palmer v. Reese Bros.*, 160 F. App'x 173, 175 (3d Cir. 2005). The sixty-day notice requirement is the minimum. 20 C.F.R. § 639.2 (2024). Employers who violate the Act are liable

to affected employees for "back pay for each day of violation" and potentially other benefits. 29 U.S.C. § 2104(a)(1).

Not all employers and not all employer actions are subject to the WARN Act's notice requirements. As relevant to this case, an employer is subject to the WARN Act if it is a "business enterprise that employs (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." *Id*. § 2101(a)(1). Further, the Act's protections are only triggered in the event of a "plant closing" or "mass layoff." *Id*. § 2102(a). A plant closing is "the permanent or temporary shutdown of a single site of employment . . . if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees." *Id*. § 2101(a)(2). As relevant here, mass layoff means a reduction in force that is not the result of a plant closing and that "results in an employment loss at the single site of employment during any 30-day period for . . . (I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees)." *Id*. § 2101(a)(3). Finally, as is crucial in this case, an "employment loss" is defined as "an employment termination, other than a discharge for cause, voluntary departure, or retirement." *Id*. § 2101(a)(6).

The federal WARN Act enumerates two exclusions from the definition of an employment loss. The first is known as the "sale-of-business exclusion":

> In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing or mass layoff . . . up to and including the effective date of the sale. After the effective date of the sale of part or all of an employer's business, the purchaser shall be responsible for providing notice for any plant closing or mass layoff. . . . Notwithstanding any other provision of this chapter, any person who is an employee of the seller (other than a part-time employee) as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale.

7

*Id.* § 2101(b)(1). Second, certain employees who, prior to the plant closing or mass layoff, are offered a transfer to another employment site have not suffered an employment loss. *Id.* § 2101(b)(2).

As Defendant correctly identifies, the success of its Motion turns on whether Plaintiffs suffered an employment loss within the meaning of the federal WARN Act. *See* (Reply Br. 8). Defendant does not dispute that Plaintiffs can satisfy the other elements of their claim. The undisputed facts before the Court are that Defendant is a business that employed more than 100 employees; that Defendant terminated more than fifty workers at its corporate office in Pennsauken on June 6, 2023, which was more than one-third of its total New Jersey workforce of 130 people; that the workers were terminated without cause; that the workers did not receive sixty days' notice of their termination; and that the workers were not offered a transfer to another employment site prior to June 6, 2023. These facts, on their own, would be enough to show that the events of June 6, 2023, amounted to either a plant closing or mass layoff for which Defendant, a qualifying employer, was required—but failed—to provide notice to their workers. *See id.* §§ 2101–2. Defendant argues, however, that it avoids liability under the sale-of-business exclusion. (Reply Br. 8–10).

Defendant argues, in sum, that because Plaintiffs were rehired by Defendant shortly after their termination and suffered no break in pay or benefits, any employment loss was merely technical and does not trigger WARN Act liability. *See* (Reply Br. 9–10). "Plaintiffs should not be permitted to obtain a windfall by recovering damages designed to compensate them for lost earnings, for a period of time in which they were paid wages and received benefits," Defendant argues. (*Id.* at 10). Further, Defendant raises the policy point that "requiring employers to pay

8

WARN damages in these situations will strongly disincentivize buyers from acquiring distressed companies and retaining the workforce when they do." (*Id*. at 6).

Plaintiffs counter that their termination on June 6, 2023, was not merely technical, as they remained out of work for two weeks with no expectation that they would return to Forman Mills. (Opp'n Br. 6). The sale-of-business exclusion, they argue, applies only in the event of a "continuity of employment" and "is not some broad, catch-all concept designed to relieve employers of all WARN liability merely because the employer eventually found a purchaser and the employees were eventually offered their jobs back weeks later." (*Id*. at 12). Plaintiffs find support for their position in the language of the exclusion itself, which applies to "any person who is an employee of the seller . . . as of the effective date of the sale." 29 U.S.C. § 2101(b)(1). Here, Plaintiffs assert that they were no longer employees of the seller at the time of the sale on June 20, 2023. Therefore, regardless of Defendant's actions after the fact, Plaintiffs argue that they experienced an employment loss within the meaning of the federal WARN Act and that Defendant has liability under the Act. (Opp'n Br. 6).

The Court begins its analysis by examining the relevant regulatory and statutory language, finding that it does little to resolve this dispute. The regulation accompanying the sale-of-business exclusion states that "[a]lthough a technical termination of the seller's employees may be deemed to have occurred when a sale becomes effective, WARN notice is only required where the employees, in fact, experience a covered employment loss." 20 C.F.R. § 639.6 (2024). As discussed, an employment loss is defined as "an employment termination, other than a discharge for cause, voluntary departure, or retirement." 29 U.S.C. § 2101(a)(6). Because "employment termination" is not defined in the statute, the Third Circuit has directed that "termination" should be given its "ordinary, contemporary, common meaning" in this context,

9

which is "[t]o discontinue the employment of." *Moore v. Warehouse Club, Inc.*, 992 F.2d 27, 29 (3d Cir. 1993). These definitions do little to resolve the legal question before the Court: is a break in employment of a couple weeks where the employees nonetheless did not miss a paycheck a covered employment loss, as Plaintiffs argue, or merely a technical termination, as Defendant contends? *See* 20 C.F.R. § 639.6.

The Court turns to caselaw to elucidate when an employment loss crosses from the technical to something more. As Defendant points out, courts often endorse a "practical, effects-driven analysis of whether a break in employment actually occurred to determine whether a company's actions resulted in an employment loss." (Reply Br. 9) (quoting *Baker v. Washington Grp. Int'l, Inc.*, Civ. No. 06-1874, 2008 WL 719258, at *3 (M.D. Pa. Mar. 14, 2008) (internal quotation marks and citations omitted). This approach is rooted in the animating principle of the WARN Act, which is "to guard against only those situations in which large numbers of employees are faced with extended job loss and the need to obtain alternative jobs or job skills." *Baker*, 2008 WL 719258, at *3 (citing 20 C.F.R. § 639.1 (2024)). A paradigmatic case of a mere technical break in employment occurs where employees are terminated as part of a sale but are immediately rehired by the buyer with no break in operations. *See*, *e.g.*, *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1280–81 (10th Cir. 1994) (discussing legislative history of sale-of-business exclusion). Extrapolating from this example, Defendant argues that because Plaintiffs were out of work for only two weeks and did not miss a paycheck, they "did not suffer any appreciable break in employment and had no practical need [in terms of retraining] to receive such notice." (Reply Br. 15–16) (quoting *Baker*, 2008 WL 719258, at *4).

However, an inspection of the cases cited by the parties suggests that neither the Third Circuit nor any district court in the Third Circuit has excused a company from WARN Act

liability for a gap of employment of more than a few days. In *Baker*, one of the main cases cited by Defendant, only one day separated the plaintiffs' termination by one company and their re-hiring by another. *Baker*, 2008 WL 719258, at *1. Accordingly, the district court held that the plaintiffs "suffered only the most minimal gap in employment" and thus "[t]he WARN Act's remedial purposes would not be served" by holding the first company liable. *Id.* at *4. In *Moore v. Warehouse Club, Inc.*, the Third Circuit declined to find liability where the employer closed a store without notice but offered on the same day to transfer the affected employees to a new location. 992 F.2d 27, 30 (3d Cir. 1993). And in *Dingle v. Union City Chair Co.*, the district court found no employment loss where, corresponding to an asset sale, plaintiffs were terminated by the seller on a Friday but re-hired by the buyer on Monday, the next business day. 134 F. Supp. 2d 441, 441–42, 444–45 (W.D. Pa. 2000). These cases all involve gaps of employment shorter than the two weeks at issue in the present case.[4]

Defendant cites other cases from outside the Third Circuit in which courts apply the sale-of-business exclusion, but they also involve a gap between employees' termination and rehiring shorter than two weeks. (Reply Br. 13–14) (citing *Smullin v. Mity Enterprises, Inc.*, 420 F.3d 836, 837, 841 (8th Cir. 2005) (affirming that asset sale that caused gap of employment of one

---

[4] Defendants also argue that "at least one district court in this circuit has held that an employment loss only begins when an employer's payment of wages and benefits ends." (Reply Br. 12–13) (citing *United Mine Workers of Am., Dist. 2 v. Helen Min. Co.*, Civ. No. 93-1131, 1994 WL 287611 (W.D. Pa. Apr. 18, 1994)). The Court, however, reads the holding of *United Mine Workers* differently. The plaintiffs in *United Mine Workers* did receive their regular pay for a period of two months when they were not working. *Id.* at *8. However, the plaintiffs argued that they had been laid off—*but not terminated*—by their company. *Id.* They claimed they had a "reasonable expectation of recall" and thus remained employees of the company even while they were not working. *Id.* Layoffs are treated differently under the WARN Act than are terminations. *See* 29 U.S.C. § 2101(a)(6)(B); 20 C.F.R. § 639.3 (2024) ("Workers on temporary layoff or on leave who have a reasonable expectation of recall are counted as employees."). The facts of *United Mine Workers* are therefore sufficiently distinct from the present case, in which Plaintiffs allege they were terminated by Defendant, that the Court does not rely on *United Mine Workers*.

11

business day did not create WARN Act liability); *Int'l Oil, Chem. & Atomic Workers, Loc. 7-517 v. Uno-Ven Co.*, 170 F.3d 779, 783–84 (7th Cir. 1999) (one day); *Int'l All. of Theatrical & Stage Emps. & Moving Picture Mach. Operators, AFL-CIO v. Compact Video Servs., Inc.*, 50 F.3d 1464, 1465, 1469 (9th Cir. 1995) (no gap); *Headrick*, 24 F.3d 1272, 1274, 1282 (10th Cir. 1994) (no gap); *Alter v. SCM Off. Supplies, Inc.*, 906 F. Supp. 1243, 1248, 1250 (N.D. Ind. 1995) (three days at most while buyer conducted interviews); *Wiltz v. M/G Transp. Servs., Inc.*, 128 F.3d 957, 959, 965 (6th Cir. 1997) (gap not specified, but court affirms finding of no WARN Act liability because employees of the seller were offered a chance to reapply for jobs with the buyer *before* the sale was finalized)).[5]

Consistent with Defendant's duty of candor to the Court, *see* N.J. Rule of Pro. Conduct 3.3(a)(3), Defendant also cites a case that it acknowledges may cut against its position. (Reply Br. 15 n.1) (citing *Phason v. Meridian Rail Corp.*, 479 F.3d 527 (7th Cir. 2007) (Easterbrook, J.)). In *Phason*, the defendant company notified its staff on New Year's Eve that it was closing its plant effective immediately and invited them to apply for jobs with a new company that had agreed to buy the assets. *Id*. at 528. The transaction did not close, however, until nine days later, on January 8 of the following year, when many of the former employees were re-hired by the buyer. *Id*. at 528–29. The court held that WARN Act liability was triggered by these events. *Id*. at 529–30. "This sale closed on January 8, 2004, more than a week after Meridian let almost all of its employees go," the court reasoned, adding: "'You're fired, but you have prospects of catching on with someone else real soon now' is a 'termination' under [29 U.S.C.

---

[5] Defendant also cites *Martin v. AMR Servs. Corp.*, 877 F. Supp. 108 (E.D.N.Y.), *aff'd sub nom. Gonzalez v. AMR Servs. Corp.*, 68 F.3d 1529 (2d Cir. 1995). (Reply Br. 14). That case, like *United Mine Workers*, 1994 WL 287611, involved the length of a layoff, not a termination. *Martin*, 877 F. Supp. at 115 ("[T]he most that can be said is that the employees were laid off for a week or less.").

12

§ 2101(a)(6)(A)]." *Id*. at 529. The court then echoed an argument made by Plaintiffs in the present case, noting that the number of employees still employed at the plant on January 8, 2004, was zero. *Id*. Therefore, the court reasoned, the sale-of-business exclusion could not apply because no former worker was still "an employee of the seller . . . as of the effective date of the sale." *Id*. at 529–30 (citing 29 U.S.C. § 2101(b)(1)). Finally, the court considered and rejected the defendant's argument that because the buyer had alerted the defendant's workers to the impending change of ownership in mid-December, the workers were able to plan ahead regardless of when the sale actually closed:

> [M]any a "done deal" turns out not to be "done" after all. Getting from informal agreement to a signature (and cash in hand) has been an insuperable gap for business transactions too numerous to count, and the larger the transaction the greater the gap. The sale of a business can't be said to be "done" until everyone has signed on the dotted line and all required payments have been made. . . . The WARN Act does not require employees to take business risks; employees' entitlements depend on events as they are, rather than as employers hope they will turn out.

*Id*. at 530. Despite the factual similarities between *Phason* and the present case, Defendant attempts to distinguish *Phason* by arguing that, unlike in *Phason*, Defendant here never "severed all ties" to Plaintiffs. (Reply Br. 15 n.1) (quoting *Phason*, 479 F.3d at 528). "In fact, Plaintiffs remained on Defendant's payroll for the entire time leading up to and continuing through the sale of the business. As such, even under this inapplicable analysis, Plaintiffs have not suffered an employment loss." (*Id*.).

The Court finds that Plaintiffs prevail in their argument that an employment loss occurred. Plaintiffs have the stronger argument for three reasons. First and most importantly, the caselaw does not support excusing a company from WARN Act liability for a gap in employment of more than a few days. The Court acknowledges that there is some force to Defendant's argument that a "practical, effects-driven analysis" of whether an employment loss

13

occurred, *see Baker*, 2008 WL 719258, at *3, should shield them from liability where, as here, Plaintiffs did not miss a paycheck and remain employed by Defendant. However, that two weeks separate when Plaintiffs were terminated and when they were recalled distinguishes this case from the other cited cases in which courts have applied the sale-of-business exclusion. The Court declines to extend the exclusion substantially further than has any other court.

Second, Plaintiffs' position better accords with the statutory language. Most persuasive is Plaintiffs' reliance on the language of the sale-of-business exclusion itself, which specifies that "any person who is an employee of the seller . . . as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale." 29 U.S.C. § 2101(b)(1). On June 6, 2023, Plaintiffs were told they were being terminated effective immediately and instructed on when to expect their "last paycheck" and how to apply for unemployment benefits. Therefore, on June 20, 2023, when the stock of Forman Mills was sold to a third party, Plaintiffs were not still employees of the seller—even if Defendant paid them back wages after the fact. Considering these undisputed facts, the sale-of-business exclusion cannot apply because none of the former workers was "an employee of the seller . . . as of the effective date of the sale." *See id*. As in *Phason*, then, Section 2101(b)(1) cannot avoid the classification of these events as an "employment loss." *See* 479 F.3d at 529–30.

Third, the Court agrees with Judge Easterbrook's reasoning in *Phason* that finding Defendant not liable under the facts of this case would shift business risks onto employees in a way the WARN Act does not contemplate. On the one hand, the Court shares Defendant's concern that holding it liable will potentially deter future buyers from acquiring distressed companies. *See* (Reply Br. 6). On the other hand, the language of the statute is clear that WARN Act liability attaches in the event of an "employment loss" that also meets the other statutory

14

elements. Here, the Court's finding that an employment loss occurred is dispositive of the matter regardless of how compelling Defendant's policy argument might be. A holding otherwise would effectively allow the notice to which employees are legally entitled to hinge on whether a distressed company can find a buyer. Employees should not be made to bear that risk.

Defendant's fallback position—that even if it is liable, Plaintiffs are not entitled to statutory damages—is also unavailing. *See* (Reply Br. 16–17). The federal WARN Act provides that employers who violate the Act are liable to employees for back pay for each day of the violation. 29 U.S.C. § 2104(a)(1). "Such liability shall be calculated for the period of the violation, up to a maximum of 60 days." *Id*. Further, the amount owed by the employer "shall be reduced by . . . any wages paid by the employer to the employee for the period of the violation." *Id*. § 2104(a)(2). Defendant argues that because Plaintiffs never missed a paycheck, the wages Plaintiffs received in the sixty days following their termination on June 6, 2023, completely offset any damages they are owed under § 2104(a)(1). This argument, however, relies on a misreading of Third Circuit precedent.

Plaintiffs are still owed statutory damages even though they never missed a paycheck. The Third Circuit has considered and explicitly rejected the lost earnings concept that Defendant urges here. *United Steelworkers of Am., AFL-CIO-CLC v. N. Star Steel Co.*, 5 F.3d 39, 42 (3d Cir. 1993) [hereinafter *North Star*] ("[T]he meaning of the term 'back pay' in WARN cannot be the lost earnings concept that defendant urges us to embrace."). Instead, the Third Circuit in *North Star* affirmed the lower court's conclusion that § 2104(a)(1) "required a violating employer to pay damages to each aggrieved employee for each calendar day within the violation period—regardless of whether that day would have been a regular workday for the employee." *Id*. at 41, 43–44; *see also United Mine Workers of Am., Int'l Union v. Eighty-Four Mining Co.*,

159 F. App'x 345, 346 (3d Cir. 2005) ("Notwithstanding the majority view of our sister courts of appeals that damages under § 2104 of the WARN Act are due only for the actual work days within the sixty day violation period, we are 'bound to adhere to our prior precedents,' namely *North Star*.") (footnote and citation omitted). The Third Circuit subsequently clarified that this method of calculating WARN Act damages applies only to hourly employees; the damages owed to salaried employees is calculated differently. *See Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 151 (3d Cir. 1998) ("[W]e hold that the regular daily rate of a salaried employee is the employee's annual salary divided by the number of days in a year.") (footnote omitted). Here, Plaintiffs are hourly workers. (Hess Cert., Exs. A–B) (displaying Plaintiffs' hourly pay rates). Therefore, they are entitled to WARN Act damages according to the calculation set forth in *North Star*.

Plaintiffs are entitled to statutory damages because the back pay they are owed under *North Star* exceeds the wages they received from Defendant during the violation period. The violation period in this case is sixty days. *See Ciarlante*, 143 F.3d at 150 ("[I]n a case where there was no warning prior to the plant closing or mass layoff, we have held that an employer would be liable for an award covering the full 60 day period specified as a maximum violation period in the statute, rather than a shorter period."). Plaintiffs assert—and their earning statements confirm—that they were paid their full wages for the sixty days following June 6, 2023, but not back pay equivalent to sixty times a working day's compensation. (Opp'n Br. 17); (Hess Cert., Exs. A–B). Defendant appears to imply that it should receive credit toward the statutory damages it owes for wages paid to Plaintiffs after the sixty-day violation period. (Reply Br. 17) ("Plaintiffs have received far more than the value of 60 *working* days of pay and benefits since June 6, 2023, the day of the alleged violation.") (emphasis in original). However,

16

Defendant provides no legal authority to support this position. In any case, this argument is foreclosed by the plain language of the statute, which states that damages "shall be calculated *for the period of the violation*," 29 U.S.C. § 2104(a)(1) (emphasis added), and that such damages "shall be reduced by . . . any wages paid by the employer to the employee *for the period of the violation*." *Id*. § 2104(a)(2) (emphasis added). Therefore, Plaintiffs are entitled to statutory damages even after accounting for the wages they received from Defendant during the violation period.

In sum, Defendant fails to show that it should avoid liability under the federal WARN Act or that Plaintiffs are entitled to no statutory damages. Accordingly, Defendant is not entitled to judgment as a matter of law on Plaintiffs' federal WARN Act claim. *See* Fed. R. Civ. P. 56(a). Defendant's Motion on this claim is denied.

      B.      **New Jersey WARN Act Claim**

The New Jersey WARN Act differs slightly from its federal counterpart. The New Jersey statute is triggered when "an establishment is subject to a transfer of operations or a termination of operations which results, during any continuous period of not more than 30 days, in the termination of employment of 50 or more employees," or when an employer conducts a "mass layoff." N.J. Stat. Ann. § 34:21-2. An establishment is "a place of employment which has been operated by an employer for a period longer than three years." *Id*. § 34:21-1. A transfer or termination of operations is the permanent or temporary transfer or shutdown of a single establishment. *Id*. Termination of employment means "the layoff of an employee without a commitment to reinstate the employee to his previous employment within six months of the layoff," but does not include voluntary departures, retirement, or discharge for misconduct. *Id*. Finally, a mass layoff is "a reduction in force which is not the result of a transfer or termination

of operations and which results in the termination of employment at an establishment during any 30-day period for 50 or more of the employees at or reporting to the establishment." *Id*. Employers with more than 100 workers who otherwise fall within these definitions must provide at least ninety days' notice before terminating their workers. *Id*. § 34:21-2. Otherwise, they must give their workers "severance pay" on top of the back pay provided for in the federal WARN Act equal to one week of pay for each full year of employment plus an additional four weeks of pay. *Id*. Any back wages paid by the employer pursuant to the federal WARN Act can offset the employer's liability under the New Jersey WARN Act. *Id*.

Despite the slightly different language in the New Jersey statute as compared to its federal counterpart, Defendant argues that they should be treated identically for the purposes of the Motion. *See* (Mot. 13–14) ("Because federal case law is clear that the WARN Act requires an actual employment loss, the NJ WARN Act should also be interpreted to require such a loss in order for the NJ WARN Act notice requirement to be implemented."). This approach finds support in the caselaw. "[T]he New Jersey Act was modeled after its federal counterpart, and the two statutes share the same purpose of protecting workers and communities by requiring employers to provide notice of plant closings and mass layoffs." *DeRosa v. Accredited Home Lenders, Inc.*, 22 A.3d 27, 36 (App. Div. 2011). Therefore, "in the absence of case law interpreting the Act, we look to federal WARN Act regulations and case law for guidance in interpreting the New Jersey WARN Act." *Id*. Consistent with this guidance, this Court has previously held that "for purposes of determining the applicability of the statutory notice requirement, the analysis is the same under both the WARN Act and the NJ[ ]WARN Act." *Platt v. Freedom Mortg. Corp.*, Civ. No. 10-968, 2013 WL 6499252, at *4 (D.N.J. Dec. 11, 2013) (Kugler, J.).

Accordingly, the Court finds that because summary judgment is not appropriate on Plaintiffs' federal WARN Act claim, it is not appropriate on their New Jersey WARN Act claim either. Specifically, if an "employment loss" occurred within the meaning of 29 U.S.C. § 2101, so, too, did a "termination of employment" occur within the meaning of N.J. Stat. Ann. § 34:21-1.

Defendant's final argument that Plaintiffs are not entitled to severance because they are still employed by Defendant also falls flat. *See* (Reply Br. 18–19). While the Court agrees that it is confusing to call the statutory damages "severance" under these circumstances, *see* (*id*. at 18 n.3), the statute is clear that such payment is owed "to each employee whose employment is terminated." N.J. Stat. Ann. § 34:21-2. Plaintiffs concede that some employees with fewer than five years of service at Forman Mills, such as Ms. Del Rossi, may not be entitled to damages under the New Jersey WARN Act due to the setoff provision for back wages paid pursuant to the federal WARN Act. (Opp'n Br. 17–18). But Ms. Barber, who had more than nine years of service as of June 6, 2023, would be entitled to damages. *See* (*id*.). The Court need not perform a full accounting at this stage. All that matters is that Defendant cannot prevail on its Motion by arguing that, even if liable, it would owe Plaintiffs no statutory damages.

Defendant is not entitled to judgment as a matter of law on Plaintiffs' New Jersey WARN Act claim. *See* Fed. R. Civ. P. 56(a). Defendant's Motion on this claim is also denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED** in its entirety. An Order follows.

Dated:   May 13, 2024                                        /s/ Robert B. Kugler
                                                                                     ROBERT B. KUGLER
                                                                                     United States District Judge