**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **NOELL DEL ROSSI, et al, individually and on behalf of all similarly-situated individuals,** <br><br> ***Plaintiffs,*** <br><br> **v.** <br><br> **FORMAN MILLS, INC., et al.** <br><br> ***Defendants.*** | : | **CIVIL ACTION NO.: 1:23-cv-03136** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Dated: May 29, 2026

**GOODLEY MCCARTHY LLC**
James E. Goodley
NJ Attorney ID: 048572013
james@gmlaborlaw.com
Ryan P. McCarthy
NJ Attorney ID: 219022016
ryan@gmlaborlaw.com
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 394-0541

**MORGAN ROOKS, P.C.**
Franklin J. Rooks, Jr., Esquire
NJ Attorney ID: 023802010
525 Route 73 North, Suite 104
Marlton, NJ 08053
Telephone No. (856) 874-8999
Facsimile No. (856) 494-1707
fjrooks@morganrooks.com

*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS


I. **Introduction** ....... 1
II. **Statement of Facts** ....... 3
III. **Argument** ....... 5
  A. **FedWARN and NJ WARN** ....... 5
  B. **WARN Cases Are Well Suited for Class Treatment** ....... 7
  C. **The Classes Satisfy Rule 23's Prerequisites** ....... 8
    1. **The Classes Satisfy Rule 23(a)** ....... 8
    2. **The Classes Satisfy Rule 23(b)(3)** ....... 15
  D. **The Court Should Appoint Undersigned Counsel as Class Counsel** ....... 19
  E. **The Court Should Appoint Plaintiffs as Class Representatives** ....... 20
  F. **The Proposed Notice Satisfied Rule 23 and Due Process** ....... 20
IV. **CONCLUSION** ....... 21

## TABLE OF AUTHORITIES

**Cases:**


*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015) .......... 10

*Calloway v. Caraco Pharm. Labs., Ltd.*,
287 F.R.D. 402 (E.D. Mich. 2012) .......... 16

*Carr v. Flowers Foods, Inc., No. CV 15-6391*,
2019 WL 2027299 (E.D. Pa. May 7, 2019) .......... 11

*Cashman v. Dolce Int'l/Hartford*,
225 F.R.D. 73 (D. Conn. 2004) .......... 7

*Chaney v. Vt. Bread Co., No. 2:21-cv-120*,
2022 U.S. Dist. LEXIS 147137 (D. Vt. Aug. 17, 2022) .......... 7-8

*Guippone v. BH S&B Holdings LLC, No. 09 CIV. 1029 CM*,
2011 U.S. Dist. LEXIS 36379, 2011 WL 1345041 (S.D.N.Y. Mar. 30, 2011) .......... 7

*Hargrove v. Sleepy's LLC*,
974 F.3d 467 (3d Cir. 2020) .......... 10

*In re APA Transp. Corp. Consol. Litig.*,
541 F.3d 233 (3d Cir. 2008) .......... 5-6

*In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*,
795 F.3d 380–09 (3d Cir. 2015) .......... 17

*In re Cmty. Bank of N. Virginia*,
418 F.3d 277 (3d Cir. 2005) .......... 17

*In re Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016) .......... 11, 17

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .......... 13

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) .......... 14

*In re Wells Fargo Home Mortg. Overtime Pay Litigation*,
527 F.Supp.2d 1053 (N.D. Cal. 2007) .......... 15

*Jacob v. Duane Reade, Inc.*,
289 F.R.D. 408 (S.D.N.Y. 2013) .......... 16, 18

*Kamar v. Radio Shack Corp.*,
254 F.R.D. 387 (C.D. Cal. 2008) .......... 15

*Kamar v. RadioShack Corp.*,
375 F.App'x 734 (9th Cir. 2010) .......... 15

*Kurihara v. Best Buy Co., Inc.*,
2007 WL 2501698 (N.D. Cal. 2007) .................... 16

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .................... 11, 13

*May v. Blackhawk Mining, LLC*,
319 F.R.D. 233 (E.D. Ky. 2017) .................... 2, 16, 18

*Pearson v. Component Tech. Corp.*,
247 F.3d 471 (3d Cir. 2001) .................... 62, 6

*Piron v. Gen. Dynamics Info. Tech., Inc., Civil Action No. 3:19cv709*,
2022 U.S. Dist. LEXIS 21926 (E.D. Va. Feb. 7, 2022) .................... 9-10

*Reinig v. RBS Citizens, N.A.*,
912 F.3d 115 (3d Cir. 2018) .................... 15

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) .................... 11

*Thorogood v. Sears, Roebuck and Co.*,
547 F.3d 742 (7th Cir. 2008) .................... 17-18

*Titus v. Burns & McDonnell, Inc.*,
2010 U.S. Dist. LEXIS 94840 (W.D. Mo. Sep. 13, 2010) .................... 14

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) .................... 9, 15

*United Steelworkers of Am. v. North Star Steel Co.*,
5 F.3d 39 (3d Cir. 1993) .................... 7

**Statutes and Regulations:**

20 C.F.R. § 639.9 .................... 7, 12, 18
29 U.S.C. § 2101 .................... 1, 7
29 U.S.C. § 2102 .................... 5, 7, 12
29 U.S.C. § 2104 .................... 3
N.J.S.A. § 34:21-1, et seq .................... 1, 3
N.J.S.A. § 34:21-2 .................... 2, 6, 7

**Rules:**

Fed. R. Civ. P. 23 .................... passim

## I. Introduction

Plaintiffs Noell Del Rossi ("Del Rossi"), Dawn Barber ("Barber") (collectively, "Plaintiffs") hereby move, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for an order granting class certification of their claims under the Federal WARN Act, 29 U.S.C. § 2101 *et. seq.* ("Fed WARN") and New Jersey WARN Act, *N.J.S.A*. 34:21-1 *et seq.*, ("NJ WARN") (collectively "WARN Acts") against Defendant Forman Mills, Inc. ("Forman Mills"), Defendants Goode Partners LLC ("Goode Partners"), Goode Forman Holdings LLC ("Goode Foreman"), and Goode Heavyweight Co-Invest LLC's ("Goode Heavyweight") (collectively, the "Goode Defendants"), and Defendant Tobias Keller ("Keller") (collectively, "Defendants").

Both Plaintiffs and the 87 other Class Members were employed by Forman Mills at its Pennsauken, New Jersey headquarters, when on June 6, 2023, 89 out of 120 employees were terminated without advance notice in a mass layoff, in violation of the WARN Acts. Although Plaintiffs and Class Members were offered their jobs back 15 days later (after being served with this lawsuit), this Court has already denied Forman Mills' Motion for Summary Judgment, ruling that Plaintiffs suffered an "employment loss" and have claims for statutory damages against Forman Mills under the WARN Acts. **ECF Nos. 31, 32**.

Prior to the mass layoff, Forman Mills was owned by Goode Partners, LLC, a New York based private equity firm through its Goode Partners Consumer Fund III, LP. **Ex. 5, Dep. Trans. of David Oddi, p. 17, ln. 4-22**. On May 24, 2023, 13 days prior to the June 6 layoff, Goode appointed Defendant Keller as the sole "independent director" of Forman Mills. See **Ex. 10, Independent Director Agreement, FM-006268-FM-006275**. Defendant Keller ordered the mass layoff to occur. **Ex. 8, Dep. Trans. Of Tobias Keller, p. 53, ln. 23-25; p. 54, ln. 1; p. 54, ln. 4**. As such, Goode and Keller plainly also meet the definition of "employer" under NJ WARN and

are jointly liable along with Forman Mills for the statutory damages. N.J.S.A. § 34:21-2(d) ("'employer' includes any individual, partnership, association, corporation, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, and includes any person [like Goode] who, directly or indirectly, owns and operates the nominal employer, or owns a corporate subsidiary that, directly or indirectly, owns and operates the nominal employer or [like Keller] makes the decision responsible for the employment action that gives rise to a mass layoff subject to notification.") (emphasis added).

As to Plaintiffs' Fed WARN claims, the Goode Defendants (but not Keller) are being sued as a single employer along with Forman Mills. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 495 (3d Cir. 2001) (holding, "[a]ffiliated corporate liability [exists] under the WARN Act" where on the whole, a non-exclusive multi-factor analysis "demonstrate[s]: (1) common ownership, (2) common directors and/or officers, (3) de facto exercise of control, (4) unity of personnel policies emanating from a common source, and (5) the dependency of operations.").

Because "[l]itigation in this matter is focused on whether the terminations were related to a plant closing or mass layoff, whether Defendants were a single employer, whether Defendants provided notice to terminated employees, and whether Defendants otherwise provided adequate compensation," *May v. Blackhawk Mining, LLC*, 319 F.R.D. 233, 239 (E.D. Ky. 2017), and because the alleged mass layoff and single-employer theories affect all class members equally, class certification standards are met. Indeed, "[t]here is no allegation or suggestion that any of the potential class members were treated differently with respect to these issues..." *Id.* Therefore, for those reasons and those that follow, under both Fed WARN and NJ WARN, Plaintiffs respectfully

submit that they have established they are similarly situated to those of the putative Classes[1] under Rule 23 and thus the Court should grant Plaintiffs' Motion for Class Certification.

## II. Statement of Facts

Plaintiffs Noell Del Rossi ("Plaintiff Del Rossi"), Dawn Barber ("Plaintiff Barber") and approximately 117 other individuals were employed by Defendant Forman Mills, Inc. ("Forman Mills") at its Pennsauken, New Jersey corporate headquarters. **Del Rossi Dec**. **1**[2] **¶3**; **Barber Dec. 1**[3] **¶3.** At approximately 4:45pm on June 6, 2023, Forman Mills summoned Plaintiff Del Rossi, Plaintiff Barber, and the other employees to attend a mandatory virtual meeting. **Del Rossi Dec**. **1 ¶3**; **Barber Dec. 1 ¶3.** At that June 6, 2023 meeting, the aforementioned employees learned that their employment was terminated, effective immediately. **Del Rossi Dec**. **1 ¶4**; **Barber Dec. 1 ¶4.** Shortly after the meeting concluded Forman Mills circulated an email to the terminated employees which stated, "[b]ased on the economic circumstances and operational needs of the business, your

---

[1] The Classes are coextensive, as all layoffs in this case occurred at Pennsauken Headquarters:

> The "Fed WARN Class" refers to "all those current and former employees, who, pursuant to 29 U.S.C. § 2104(a)(5) who worked at, reported to, or received assignments from Defendant Forman Mills, Inc.'s Headquarters at Pennsauken, New Jersey and were terminated without cause beginning on or about June 6, 2023, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff and/or plant closing ordered."
>
> The "NJ WARN Class" (jointly with Fed WARN Class, "WARN Classes" or "Classes") refers to "all those current and former employees, who, pursuant to *N.J.S.A*. 34:21-1, *et seq.*, worked at, reported to, or received assignments from Defendant Forman Mills, Inc. in New Jersey and were terminated without cause beginning on or about June 6, 2023, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff, termination of operations, and/or transfer of operations ordered." See also **Proposed Order.**

[2] "Del Rossi Dec. 1" refers to the October 5, 2023 Declaration of Noell Del Rossi. **ECF No. 23-2.**

[3] "Barber Dec. 1" refers to the October 5, 2023 Declaration of Dawn Barber. **ECF No. 23-3.**

position has been eliminated." Forman Mills' email to the terminated employees also stated that, "[u]nfortunately, given the economic circumstances of the business there will not be severance paid at this time." **DelRossi Decl. 1, Ex. A, "Termination Email"**. Forman Mills' email concluded by providing the terminated employees with contact information for "State Unemployment Offices," which included New Jersey, Pennsylvania, Maryland, New York, and several other states. *Id*. The terminated employees were informed that they had to return all company-issued equipment, including laptops, printer/scanners, building access cards, any other items that they were provided. Forman Mills informed the terminated employees that they would be receiving their final paycheck in accordance with the normal payroll cycle. *Id*. At the time of the mass termination, Forman Mills informed the employees that no decisions had been made with respect to a bankruptcy filing. *Id*. Forman Mills had not sold its business or otherwise informed its employees that a successor organization had been identified. On June 20, 2023, Plaintiff Del Rossi received a telephone call from Mike Kvitko, Forman Mills' chief executive officer (CEO). **Del Rossi Dec**. **1 ¶11**. Mr. Kvitko informed Plaintiff Del Rossi that Forman Mills was being purchased by Shopper's World, Inc. *Id*. Forman Mills told Plaintiff Del Rossi and Plaintiff Del Rossi that they needed to return to work the next day, June 21, 2023. **Del Rossi Dec**. **1 ¶11**; **Barber Dec. 1 ¶10.** Plaintiff Del Rossi, Plaintiff Barber, and the other employees affected by Forman Mills' mass layoff returned to work on June 21, 2023. **Del Rossi Dec**. **1 ¶12**; **Barber Dec. 1 ¶12.**

Prior to the mass layoff, Forman Mills was owned by Defendant Goode Partners, LLC, a New York based private equity firm through its Goode Partners Consumer Fund III, LP. **Ex. 5, Dep. Trans. of David Oddi, p. 17, ln. 4-22**. David Oddi was the president of Forman Mills, Inc. ***Id*., p. 38, ¶4-8**. The Goode Defendants appointed and controlled the board of directors of Forman Mills. **Ex. 10, FM-006267 to 006275 (Independent Director Agreement); Dep. Trans. of David**

**Oddi, p. 103-105**. The Goode Defendants facilitated the installment of Mike Kvitko to serve as Forman Mills' chief executive officer. ***Id*., p. 91, ln. 15-21**. The Goode Defendants, through the Goode Consumer Fund III, infused additional capital into Forman Mills because of liquidity issues. ***Id*., p. 70, ln. 5-25; p. 71, ln. 1-17**. Goode Defendants caused the removal of Forman Mills' entire board on May 24, 2023. ***Id*., p. 150, ln.18-25; p. 170, ln.18-23**. Goode Defendants unilaterally replaced the Forman Mills board with a sole director, Tobias Keller. ***Id*., p. 150, ln. 4-6; p. 156, ln. 3-25**. The Goode Defendants, through the Goode Consumer Fund III indemnified Tobias Keller against any potential WARN liabilities. ***Id*., p. 160, ln. 1-20**. After being installed as the sole director on Forman Mills' board, Mr. Keller terminated the employment of 89 out of 120 staff at Forman Mills' Pennsauken corporate office on June 6, 2023. **Ex. 6, Dep. Trans. of Kevin Hess, p. 105, ln. 6-25; p. 106, ln. 1; p. 176, ln. 7-11**; **Dep. Trans. David Oddi, p. 170, ln. 18-23; Ex. 8, Dep. Trans. of Tobias Keller, p. 53, ln. 23-25; p. 54, ln. 1; p. 54, ln. 4**; **ECF No. 96-1, Keller Declaration at ¶17-18.** After the termination of the 89 employees at Forman Mills' corporate office, 31 employees remained employed at the corporate office, which continued operations. There was thus no shutdown. **Dep. Trans. of Kevin Hess, p. 115, ln. 16-25; p. 144, ln. 19-21**.

## III. Argument

### A. FedWARN and NJ WARN

Per Fed WARN, 29 U.S.C. § 2102(a), "An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order [in the non-union setting] to each affected employee..." The Third Circuit has stated that "...the WARN Act establishes 'strict liability': an employer must give notice 60 days prior to a plant closing, unless it can demonstrate that it falls within one of three specific enumerated exceptions: (1) the 'faltering company' defense, (2) the 'unforeseeable business circumstances' exception, or the (3) 'natural disaster' defense." *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 248 (3d

Cir. 2008) (citing 29 U.S.C. § 2102(b); 20 C.F.R. § 639.9).

Similarly, NJ WARN, N.J. Stat. § 34:21-2(a), provides that "if an employer conducts a mass layoff, the employer who operates the establishment or conducts the mass layoff shall [p]rovide, in the case of an employer who employs 100 or more employees, not less than 90 days ... before the first termination of employment occurs in connection with the termination or transfer of operations, or mass layoff, notification of the termination or transfer of operations [to] each employee whose employment is to be terminated." Specific to NJ WARN is a sweepingly broad definition of "employer" N.J.S.A. § 34:21-2(d), which "includes any individual … or any person … acting directly or indirectly in the interest of an employer in relation to an employee, and includes any person who … makes the decision responsible for the employment action that gives rise to a mass layoff subject to notification."

Differences between the two statutes include:

NJ WARN provides automatic joint and several liability for "any person who … makes the decision responsible for the employment action that gives rise to a mass layoff subject to notification," N.J.S.A. § 34:21-2(d). That is, NJ WARN provides for individual liability for those making the termination decision, whereas FedWARN does not. Additionally, as to FedWARN, courts have adopted the federal common law "single employer" (also known as "integrated enterprise") doctrine based on a non-exclusive multi-factor test, *Pearson v. Component Tech. Corp.,* 247 F.3d 471, 495 (3d Cir. 2001)[4], whereas, NJ WARN makes automatically liable parent

[4] 247 F.3d at 495 (holding, "[a]ffiliated corporate liability [exists] under the WARN Act" where on the whole, a non-exclusive multi-factor analysis "demonstrate[s]: (1) common ownership, (2) common directors and/or officers, (3) de facto exercise of control, (4) unity of personnel policies emanating from a common source, and (5) the dependency of operations.").

companies and private equity entities who, like the Goode Defendants, "own[] and operate[]" – "directly or indirectly" – an employer like Forman Mills. N.J.S.A. § 34:21-2(d).

FedWARN contains an "unforeseeable business circumstances" exception, which applies to plant closings only[5] (i.e., not mass layoffs), 29 U.S.C. § 2102(b); 20 C.F.R. § 639.9. NJ WARN has no such defense in any context.

Finally, damages under FedWARN are 60 times a working day's compensation (as opposed to a 60 day period of lost earnings). *See United Steelworkers of Am. v. North Star Steel Co*., 5 F.3d 39, 42 (3d Cir. 1993). By contrast, NJ WARN provides four weeks of compensation in the event of a notice violation, and separately severance pay of one week of compensation per year of service (regardless of whether there is a notice violation). N.J.S.A. 34:21-2(b).

**B. WARN Cases Are Well Suited for Class Treatment**

Given that WARN cases, by definition, involve "plant closings" or "mass layoffs" – that is, the mass termination of more than 50 employees from a "single site of employment," 29 U.S.C. § 2101(a)(2), (3), which tend to affect all such laid off employees, courts have routinely found these cases well-suited for class treatment. See, e.g., *Cashman v. Dolce Int'l/Hartford*, 225 F.R.D. 73, 90 (D. Conn. 2004) ("Because WARN Act lawsuits are permitted only against employers with more than 100 employees, WARN actions are particularly amenable to class-based litigation.") (citing *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989)); *Guippone v. BH S&B Holdings LLC*, No. 09 CIV. 1029 CM, 2011 U.S. Dist. LEXIS 36379, 2011 WL 1345041, at *2 (S.D.N.Y. Mar. 30, 2011) ("Class certification is routinely granted in WARN Act cases.") (citing *Pearson v. Component Technology Corp.*, 247 F.3d 471 (3d Cir. 2001)); *Chaney v. Vt.*

[5] As 89 out of 120 employees at Forman Mills' Headquarters were laid off, this case concerns a "mass layoff" rather than a "plant shutdown."

*Bread Co.,* No. 2:21-cv-120, 2022 U.S. Dist. LEXIS 147137, at *5 (D. Vt. Aug. 17, 2022) (same).

### C. The Classes Satisfy Rule 23's Prerequisites

#### 1. The Classes Satisfy Rule 23(a)

Rule 23(a) provides that:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a) (emphasis added). These prongs are known as "numerosity," "commonality," "typicality," and "adequacy," and are addressed in sequence below.

Furthermore, WARN class actions, including this one, are typically certified under Rule 23(b)(3):

> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
> …
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3) (emphasis added). The two overarching requirements to certify a class under Rule 23(b)(3) are thus known as "predominance" and "superiority" and are addressed in turn below.

**a. Merits Inquiries Are Limited**

At the certification stage, inquiries into the merits (such as whether a mass layoff actually occurred, whether a secondary defendant is liable under a single-employer theory or whether the "unforeseeable business circumstances" exception applies) should not be conducted, except to the extent that they effect the Rule 23(a) or (b) analysis (i.e., such defenses apply differently across the class). See, e.g., *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) (Where "the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity - [an alleged] failure of proof as to an element of the plaintiffs' cause of action — courts should engage that question as a matter of summary judgment, not class certification."); *Piron v. Gen. Dynamics Info. Tech., Inc.*, Civil Action No. 3:19cv709, 2022 U.S. Dist. LEXIS 21926, at *21 (E.D. Va. Feb. 7, 2022) ("'Merits questions may be considered to the extent - but only to the extent - that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'") (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013)); *Chaney v. Vt. Bread Co.*, No. 2:21-cv-120, 2022 U.S. Dist. LEXIS 147137, at *9 (D. Vt. Aug. 17, 2022) ("Indeed, as suggested in *Tyson Foods*, the single employer issue is most appropriately presented in a separate dispositive motion after discovery."); *May v. Blackhawk Mining, LLC*, 319 F.R.D. 233, 239 (E.D. Ky. 2017) (same); *In re Taylor Bean & Whitaker Mortg. Corp.*, No. 3:09-BK-07047-JAF, 2010 Bankr. LEXIS 3306, 2010 WL 4025873, at *5 (Bankr. M.D. Fla. Sept. 27, 2010) ("The Court will not summarily deny class certification based on specific, merit based WARN Act requirements before the parties have had some opportunity to conduct discovery."); *Grimes v. Evergreen Recreational Vehicles, LLC*, No. 3:16-CV-472-JD, 2018 U.S. Dist. LEXIS 39836, 2018 WL 1257237, at *3 (N.D. Ind. Mar. 12, 2018) ("the outstanding question of whether or not each of the Defendant entities constitutes an employer covered by the WARN Act, 29 U.S.C. §

2101(a)(1), does not necessarily bar class certification; rather, it presents a common question of law and fact that will affect the putative class"); *Ramcharan v. A.F.L. Quality, Inc.*, No. 1:12-CV-07551, 2014 U.S. Dist. LEXIS 124441, 2014 WL 4388579, at *9 (D.N.J. Sept. 5, 2014) ("consideration of the merits of Plaintiff's 'single employer' theory of liability does not render certification of the putative class inappropriate at this juncture") (Bumb, J.), *reversed in part on other grounds on reconsideration*, 2015 U.S. Dist. LEXIS 91695, 2015 WL 4275534 (D.N.J. Apr. 14, 2015).

**b. Ascertainability**

"As noted, in our Circuit a Rule 23(b)(3) class must also be 'currently and readily ascertainable based on objective criteria.'" *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020) (quoting *Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012).

As the Third Circuit explained in *Byrd*:

> Ascertainability is an "essential prerequisite," or an *implied* requirement, of Rule 23, "at least with respect to actions under Rule 23(b)(3)." *Marcus*, 687 F.3d at 592-93. *Marcus* identified "important objectives," *id.* at 593, or policy rationales, supporting the ascertainability requirement. These included removing administrative burdens that were "incongruous with the efficiencies expected in a class action," providing the best notice practicable under Rule 23(c)(2) in a Rule 23(b)(3) action, and protecting defendants by ensuring that those persons ultimately bound by the final judgment could be clearly identified. *Id.* at 593.

*Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 n.5 (3d Cir. 2015).

Here, Defendant Forman Mills' own employment records demonstrate the class can be easily and directly ascertained. **Dep. Trans. of Kevin Hess, p. 105, ln. 6-25; p. 115, ln. 16-25** (referring to **Exhibit 7 to the Hess Dep.**, which was a corporate roster showing 89 employees of the corporate office were terminated and 31 employees remained employed).

**c. Numerosity**

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'While no minimum number of plaintiffs is required to maintain a suit as a class action,' as a general rule, 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" *Carr v. Flowers Foods, Inc.*, No. CV 15-6391, 2019 WL 2027299, at *8 (E.D. Pa. May 7, 2019) (*quoting In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016)).

Here, as just mentioned with respect to ascertainability, Forman Mills' own employment records demonstrate that the Class comprises 89 individuals with a FedWARN claim and/or an NJ WARN claim. Thus, numerosity is satisfied.

**d. Commonality**

The commonality requirement is met where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Third Circuit has observed, "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class members. For purposes of Rule 23(a)(2), even a single common question will do." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (internal citations and quotations omitted); *see also Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, there are common questions of law and fact, including:

- whether the members of the WARN Classes were employees of Defendant FM who worked at or reported to Defendant FM in New Jersey and/or at Defendant FM's Facility (**TAC ¶ 23(a)**);
- whether Defendant FM and the Goode Defendants are a single employer or a single integrated entity and thus whether the Goode Defendants are jointly liable for Defendant FM's Fed WARN liability (**TAC ¶ 23(b)**);

- whether Defendants (save Keller) unlawfully terminated the employment of the members of the Federal WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the Federal WARN Act (**TAC ¶ 23(c)**);

- whether Defendants unlawfully terminated the employment of the members of the NJ WARN Class without cause on their part and without giving them 90 days advance written notice in violation of the New Jersey WARN Act (**TAC ¶ 23(d)**);

- whether Defendants can prove that any exemptions under the Federal or New Jersey WARN Acts apply (**TAC ¶ 23(e)** and Forman Mills' Answer to TAC (**ECF No. 78**, Sixth Separate Defense, asserting "faltering company" exception, 29 U.S.C.S. § 2102(b), 20 CFR § 639.9);

- whether Forman Mills or Goode Defendants unlawfully failed to pay the Federal WARN Class members 60 days wages and benefits as required by Federal WARN Act (**TAC ¶ 23(f)**);

- whether Defendants unlawfully failed to pay the NJ WARN Class members one week of pay for each year of service as required by the New Jersey WARN Act (**TAC ¶ 23(g)**); and

- whether Defendants unlawfully failed to pay the NJ WARN Class members an additional four weeks of pay for not providing the requisite 90-day notice required by the New Jersey WARN Act (**TAC ¶ 23(h)**).

Since even one common question of law or fact satisfies the commonality requirement, and a litany of common questions exist here, it is clear that the proposed Class here satisfies commonality.

**e. Typicality**

Typicality is met where, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The concepts of typicality and commonality are closely related and often tend to merge." *Marcus*, 687 F.3d at 597. "Typicality, however, derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is *markedly different* from that of other members of the class even though common issues of law or fact are present.'" *Id*. (quoting 7A Wright, supra, § 1764) (emphasis added). To determine whether the plaintiff's claims are *markedly different* from that of the class, the Court should consider whether:

> (1) the claims of the class representative [are] generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative [are] subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative [are] sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig*., 589 F.3d 585, 599 (3d Cir. 2009).

Here, typicality is established because Plaintiff DelRossi's and Plaintiff Barber's claims are each generally the same as those of the proposed Class, both in the legal theory and the factual circumstances underlying that theory. That is, Plaintiffs claim that Defendants improperly denied them the requisite notice under FedWARN and NJ WARN as part of the same mass layoff on the same date, as well as the severance pay they were entitled to under NJ WARN. This is the same basis for the claims of the Class. Furthermore, Plaintiffs are not subject to any individualized

defenses, much less one that is a major focus on the litigation. Finally, the interests and incentives of Plaintiff are aligned with that of the Class.

**f. Adequacy**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[T]he adequacy inquiry under Rule 23 has two components designed to ensure that absentees' interests are fully pursued…First, the adequacy inquiry tests the qualifications of the counsel to represent the class… Second, it seeks to uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004) (internal citations and quotations omitted).

Here, proposed Class Counsel, Goodley McCarthy LLC and Morgan Rooks PC, have the qualifications to represent the Class. Goodley McCarthy is a workers' rights law firm that focuses on the representation of employees in class and collective wage and hour and WARN actions such as the instant matter. **Goodley Decl. ¶¶ 13-37; Ex. 2, Declaration of Franklin J. Rooks, ¶¶ 8-15.** More specifically, class counsel in this case, James E. Goodley and Ryan P. McCarthy, have been appointed class counsel, and achieved excellent results for their clients, in class and collective action employment cases. **Goodley Decl. ¶¶ 15, 31**. Similarly, Franklin J. Rooks, Jr. of Morgan Rooks PC has litigated several class, collective and individual employment actions on behalf of plaintiffs. **Rooks Decl. ¶¶ 13-15.**

Additionally, there is no conflict of interest between Plaintiffs and the proposed Class; their interests and incentives are aligned. See **Goodley Decl. ¶ 8; Del Rossi Decl. ¶ 3; Barber Decl. ¶ 3.** See also *Titus v. Burns & McDonnell, Inc.*, 2010 U.S. Dist. LEXIS 94840, at *10 (W.D. Mo. Sep. 13, 2010) (In ERISA case, the "Court presumes the adequacy of class counsel in the absence of evidence to the contrary.").

Finally, in addition to showing their ability for the last three years in competently litigating this case, **Goodley Decl. ¶ 11,** Counsel have the resources and the staffing necessary to litigate this case on behalf of the WARN Classes. See **Goodley Decl. ¶ 10; Rooks Decl. ¶ 7.**

**2. The Classes Satisfy Rule 23(b)(3)**

**a. Predominance**

Class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Like the commonality requirement, predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. However, the predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Reinig v. RBS Citizens, N.A*., 912 F.3d 115, 127 (3d Cir. 2018) (internal citations and quotations omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted).

Furthermore, this prerequisite is met "where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008), *aff'd sub nom. Kamar v. RadioShack Corp.*, 375 F.App'x 734 (9th Cir. 2010) (citing *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 527 F.Supp.2d 1053, 1071 (N.D. Cal. 2007)). Even so, "the existence of certain individualized or deviating facts will not preclude certification if most class members were

subjected to a company policy in a way that gives rise to consistent liability or lack thereof." *See, e.g.*, *Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698, at *9-10 (N.D. Cal. 2007).

In this case, not only are there multiple questions of law and fact common across the Class, as described in Section III.c.1.D, *supra*, but these common questions predominate over individualized questions (if any), where Plaintiffs alleges they and other Class Members were improperly denied the advance notice legally required by the WARN Acts. *May v. Blackhawk Mining, LLC*, 319 F.R.D. 233, 239 (E.D. Ky. 2017) (Finding predominance met, "Litigation in this matter is focused on whether the terminations were related to a plant closing or mass layoff, whether Defendants were a single employer, whether Defendants provided notice to terminated employees, and whether Defendants otherwise provided adequate compensation. There is no allegation or suggestion that any of the potential class members were treated differently with respect to these issues..."); *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) ("Common facts and issues predominate and Calloway alleges a single course of wrongful conduct here. Each potential claimant was terminated from employment with Caraco around the same time. Each potential class member's claim is that the termination was in violation of the 60 day notice requirement of the WARN Act. The question 'at the heart of the litigation' for every claimant is whether it was reasonably foreseeable that the FDA would close down Caraco. Thus, the predominance requirement is met.") (quoting *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007)); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408 (S.D.N.Y. 2013) (holding predominance satisfied as to class of 750 assistant store managers who were misclassified as exempt from the overtime requirements of New York law).

**b. Superiority**

"Rule 23(b)(3) requires that class treatment be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' and it provides a non-exhaustive list of factors

to consider in determining superiority, including: the class members' interest in individually controlling the prosecution of separate actions; the extent and nature of any similar litigation already commenced by class members; the desirability of concentrating the litigation in a particular forum; and the difficulties likely to be encountered in the management of a class action." *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 408–09 (3d Cir. 2015) (*quoting* Fed. R. Civ. P. 23(b)(3)). "'The superiority requirement asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Id.* (*quoting In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 309 (3d Cir. 2005)).

As to Rule 23(b)(3)(A), here the individual damages for each class member (60 working days' worth of compensation for the FedWARN notice violation and one week of compensation per year of service under NJ WARN's severance provision[6]) are relatively small and therefore individuals would not have a strong incentive to individually control litigation of their claims. Furthermore, it would be difficult to find counsel willing to litigate such small claims. Given the high degree of similarity of the class members' claims and evidence, and the small dollar damages per class member, this is the quintessential scenario where class action treatment is superior to individual adjudication. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 242 (3d Cir. 2016) ("The class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated. The two points are closely related. If every small claim had to be litigated separately, the vindication of small claims would be rare. The fixed costs of litigation make it impossible.") (*quoting Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742 , 744 (7th Cir.

[6] Plaintiffs seek cumulative damages for the classes – e.g., (1) the higher of the Fed WARN and NJ WARN notice penalty, plus (2) one week of severance per year of service under NJ WARN.

2008)); *see also, e.g.*, *May v. Blackhawk Mining, LLC*, 319 F.R.D. 233, 239 (E.D. Ky. 2017) ("class certification is the superior method of resolving this dispute under the WARN Act because many of the claims are quite small, making individual lawsuits impracticable."); *Jacob*, 289 F.R.D. at 423 ("For a single, potentially misclassified [employee], the impetus to sue an employer for what might constitute a small economic return is minimal. The alleged misclassification here applies to an entire class of employees' duties, rather than an individual, case-by-case determination. Additionally, the burden and expense of individual litigation would likely be prohibitive for most ASM plaintiffs.").

As to Rule 23(b)(3)(B), to Counsel's knowledge, no other litigation concerning the instant controversy has been commenced by or against Class Members.

As to Rule 23(b)(3)(C), this District is where the direct employer, Forman Mills, is headquartered and thus subject to general jurisdiction, **TAC ¶ 8** ("Defendant FM's corporate headquarters are located at 1070 Thomas Busch Memorial Highway, Pennsauken, NJ 08110."); admitted in FM's Answer, **ECF No. 78**. Although Defendant Keller filed a motion to dismiss relating in part to personal jurisdiction, **ECF No. 96**, the Court denied his motion, **ECF No. 128**. Therefore, this District is the most efficient and central forum for which any Class Members' claims may be adjudicated.

As to Rule 23(b)(3)(D), Plaintiffs cannot contemplate how the Court would have difficulties in managing this case as a class action, where the focus is the mass layoff at Forman Mills' headquarters and various coverage issues and defenses (e.g., whether the Goode Defendants were integrated with Forman Mills as a single employer or whether Forman Mills' failure to provide notice under FedWARN is excused by the "faltering company" defense, 20 CFR § 639.9) that apply to all Class Members alike. *May*, 319 F.R.D. at 239 ("Litigation in this matter is focused

on whether the terminations were related to a plant closing or mass layoff, whether Defendants were a single employer, whether Defendants provided notice to terminated employees, and whether Defendants otherwise provided adequate compensation. There is no allegation or suggestion that any of the potential class members were treated differently with respect to these issues...").

**D. The Court Should Appoint Undersigned Counsel as Class Counsel**

Further, per Fed. R. Civ. P. 23(g)(1), "...a court that certifies a class must appoint class counsel. In appointing class counsel, the court:"

> (A) **must** consider:
>
> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class;
>
> (B) **may** consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
>
> (C) **may** order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
>
> (D) **may** include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and
>
> (E) **may** make further orders in connection with the appointment.

Here, for the reasons previously articulated with respect to adequacy as representative of the proposed classes, Fed. R. Civ. P. 23(a)(4), as well as the declarations of Class Counsel, *see generally* Goodley Decl. and Rooks Decl., Plaintiffs submit they have established their fitness to serve as class representatives for the WARN Classes.

Counsel's experience in labor and employment law, as well as complex litigation, **Goodley Decl. ¶¶ 13-37; Rooks Decl. ¶¶ 13-15**, establishes that they are fit to represent the

Classes in this matter. Counsel has undoubtedly handled this matter effectively, having defeated Forman Mills' initial Motion to Dismiss Plaintiffs' First Amended Complaint (converted by the Court to a Motion for Summary Judgment), **ECF Nos. 31, 32**; the Goode Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint, **ECF No. 128**; and Defendant Keller's Motion to Dismiss Plaintiffs' Third Amended Complaint, ***Id***.. Counsel has also taken effective written discovery and three depositions, **Goodley Decl. ¶ 11**. Through doing so, Counsel has demonstrated their knowledge of the WARN Acts and their effectiveness as complex litigators. Counsel (two law firms with three attorneys and a senior paralegal) has also demonstrated they have the resources necessary to adequately represent the interests of the Classes. **Goodley Decl. ¶ 10; Rooks Decl. ¶ 7**. Counsel thus respectfully request their appointment for that role as set forth in the proposed order.

### E. The Court Should Appoint Plaintiffs as Class Representatives

For the reasons already articulated with respect to adequacy as representative of the proposed classes, Fed. R. Civ. P. 23(a)(4), Plaintiffs submit they have established their fitness to serve as class representatives for the WARN Classes and respectfully request their appointment for that role as set forth in the proposed order.

### F. The Proposed Notice Satisfied Rule 23 and Due Process

Under Fed. R. Civ. P. 23(c)(2)(B) (where a Rule 23(b)(3) settlement class will be certified):

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;

> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice meets all of the above criteria. The Notice specifies the nature of the action, the definition of the Class, and the class claims, issues and defenses. The Notice further provides that a class member may exclude themselves from the litigation and may obtain their own attorney if they desire, as well as the process for requesting exclusion. Finally, the Notice informs Class Members that if they do nothing, they will be bound by the outcome of the class litigation, whether favorable or unfavorable. *See* **Ex. 9, ("Notice")**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Class Certification in the form of the proposed order.

Dated: May 29, 2026

/s/ James E. Goodley
**GOODLEY MCCARTHY LLC**
James E. Goodley
NJ Attorney ID: 048572013
james@gmlaborlaw.com
Ryan P. McCarthy
NJ Attorney ID: 219022016
ryan@gmlaborlaw.com
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 394-0541

/s/ Franklin J. Rooks, Jr.
**MORGAN ROOKS, P.C.**
Franklin J. Rooks, Jr., Esquire
NJ Attorney ID: 023802010
525 Route 73 North, Suite 104
Marlton, NJ 08053
Telephone No. (856) 874-8999
fjrooks@morganrooks.com

*Attorneys for Plaintiffs and the Class*