**COZEN O'CONNOR, P.C.**
*A Pennsylvania professional corporation*
By: Jason A. Cabrera (NJ 077342013)
1010 Kings Highway South
Cherry Hill, NJ 08034
Phone: 215-665-7267
*Attorneys for Defendants Goode Partners LLC, Goode Forman Holdings LLC, and Good Heavyweight Co-Invest LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NOELL DEL ROSSI, et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>FORMAN MILLS, INC.;<br>GOODE PARTNERS LLC;<br>GOODE FORMAN HOLDINGS LLC;<br>GOODE HEAVYWEIGHT CO-INVEST LLC; and TOBIAS KELLER,<br><br>Defendants. | Civil Action No. 2:23-cv-03136-CPO-AMD |

**GOODE DEFENDANTS' BRIEF IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. PERTINENT PROCEDURAL AND FACTUAL BACKGROUND .......... 2

III. LEGAL STANDARDS .......... 4

IV. ARGUMENT .......... 5

- A. Plaintiffs' Statement of Facts Repeatedly Overstates The Actual Record .......... 5
- B. Del Rossi and Barber Cannot Adequately Represent Current Employees of Forman Mills. .......... 6
- C. Plaintiffs' Proposed Class Notice Is Premature And Inadequate. .......... 12

V. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Andrews Farms v. Calcot, Ltd.,
2009 WL 1211374 (E.D. Cal. May 1, 2009) ....................9, 10

In re Chocolate Confectionary Antitrust Litig.,
289 F.R.D. 200 (M.D. Pa. 2012)....................5

Hartman v. Duffey,
19 F.3d 1459 (D.C. Cir. 1994)....................8

Henkel v. Highgate Hotels, LP,
2021 WL 2550203 (M.D. Pa. June 22, 2021)....................14

Hoffmann-La Roche Inc. v. Sperling,
493 U.S. 165 (1989)....................14

In re Hydrogen Peroxide Antitrust Litig.,
552 F.3d 305 (3d Cir. 2008), as amended (Jan. 16, 2009)....................4

Johnston v. HBO Film Mgmt., Inc.,
265 F.3d 178 (3d Cir. 2001)....................7

Martin v. Sprint/United Mgmt. Co.,
2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ....................13

Oetinger v. First Residential Mortgage Network, Inc.,
2009 WL 2162963 (D. Ky. July 16, 2009) ....................8

Pereira v. Foot Locker, Inc.,
261 F.R.D. 60 (E.D. Pa. 2009)....................14

Perrigo Institutional Inv. Grp. v. Papa,
150 F.4th 206 (3d Cir. 2025) ....................12

Rehwaldt v. Elec. Data Sys. Corp.,
2005 WL 1130480 (W.D.N.Y. Apr. 13, 2005)....................7

Russell v. Educational Comm'n for Foreign Med. Graduates,
15 F.4th 259 (3d Cir. 2021) ....................4

Southern Snack Foods, Inc. v. J & J Snack Foods Corp.,
79 F.R.D. 678 (D.N.J. 1978)....................7, 8, 10

Valli v. Avis Budget Grp. Inc.,
162 F.4th 396 (3d Cir. 2025) ....................................................................................4

Wal-Mart Stores, Inc. v. Dukes,
564 U.S. 338 (2011)....................................................................................................4

Wetzel v. Liberty Mutual Insurance Co.,
508 F.2d 239 (3d Cir. 1975)...................................................................................8, 11

Wright v. Lehigh Valley Hosp. and Health Network,
2011 WL 221770 (E.D. Pa. Jan. 20, 2011) ..............................................................14

Zeno v. Ford Motor Co., Inc.,
238 F.R.D. 173 (W.D. Pa. 2006) ..............................................................................14

Pursuant to Local Civil Rule 7.2, Defendants Goode Partners LLC ("Goode Partners"), Goode Forman Holdings LLC ("Goode Forman"), and Goode Heavyweight Co-Invest LLC ("Goode Heavyweight") (collectively, the "Goode Defendants") submit this brief in opposition to the motion filed by Plaintiffs Noell Del Rossi ("Del Rossi") and Dawn Barber ("Barber") (collectively, "Plaintiffs") for class certification ("Motion") (ECF 139).

## I. INTRODUCTION

Plaintiffs' only hope of imposing liability against the Goode Defendants under the federal WARN Act and the New Jersey WARN Act (officially known as the "Millville Dallas Airmotive Plant Job Loss Notification Act," N.J.S.A. 34:21-1 to 21-7) hinges upon a finding that Goode Partners, Goode Foreman, and Goode Heavyweight—each and all of them—were a joint employer with Defendant Forman Mills, Inc. ("Forman Mills"). Although the ultimate resolution of that merits issue is not yet before the Court (though it will be soon), Plaintiffs must establish that they are adequate representatives for the putative class that they seek to represent. Plaintiffs are not, and the Court should deny the motion and enable Del Rossi and Barber to continue the merits of their claims as individual plaintiffs.

In their initial motion papers, Plaintiffs often overstate the actual factual record and omit critically important facts that show their differences with the proposed classes. Plaintiffs consistently treat "Goode Defendants" as one entity—not three separate entities. Plaintiffs do not identify record evidence showing the Goode Defendants had any role at Forman Mills as of the date their Plaintiffs' termination occurred in June 2023 (nor is there any such evidence). Plaintiffs do not acknowledge that they each voluntarily left Forman Mills' employ in August 2024 (before Goode Defendants even filed an answer) yet they still seek to represent "current" employees who still work at Forman Mills' headquarters. Plaintiffs are not adequate class representatives here. For these reasons, the Court should deny the motion for class certification.

## II. PERTINENT PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Noell Del Rossi filed a complaint against Forman Mills, Inc. on June 7, 2023, asserting a violation of the federal WARN Act (29 U.S.C. § 2101, et seq.) in Count 1 and the New Jersey WARN Act ("NJ WARN Act") (N.J.S.A. 34:21-1 to 21-7), officially known as the "Millville Dallas Airmotive Plant Job Loss Notification Act," in Count 2. (ECF 1.) Del Rossi complained about a job termination that occurred one day earlier, on June 6, 2023, when Forman Mills, Inc. terminated about 120 employees at its corporate headquarters. (See ECF 31 at p. 3-4.) On June 20, 2023, Forman Mills, Inc. invited Del Rossi and all other previously-terminated employees to return to work. (Id. at p. 3.) The very next day, Forman Mills, Inc. moved to dismiss the Complaint (ECF 16). On September 8, 2023, Plaintiff Dawn Barber joined the action and together, both Plaintiffs filed an Amended Complaint (ECF 20).

Forman Mills, Inc. told Del Rossi and Barber to return to work on June 20, 2023 (Plaintiff's Motion at ECF 139-2, p. 8.) Forman Mills, Inc. paid all employees who had been terminated, including Del Rossi and Barber, for the two weeks they were out of work. (See ECF 31 at p. 3-4.) Forman Mills filed a motion to dismiss the Amended Complaint (ECF 21), which the Court (Kugler, J.) construed as a motion for summary judgment (ECF 27) and then denied (ECF 32) on May 13, 2024.

Two months later on July 10, 2024, Plaintiffs filed a Second Amended Complaint to add the Goode Defendants to this action. (ECF 41). The Goode Defendants filed an Answer on August 22, 2024 (ECF 52). After discovery, Plaintiffs sought leave to add yet another defendant: Tobias Keller, who was appointed to serve as the sole, independent director of Forman Mills after former members of Goode Partners resigned from the Board. (ECF 63.) The Court granted leave.

Plaintiffs received and responded to written discovery from the Goode Defendants in early January 2025. In her interrogatory responses, Del Rossi admitted that she worked at Forman Mills from September 13, 2021 through August 8, 2024. (Declaration of Jason Cabrera at Exhibit A (Del Rossi Responses to Goode Defendants' First Set of Interrogatories), Rog 1.) She left due to a voluntary resignation. (Id. at Exh. A, Rog 5.) Barber stated that she worked at Forman Mills from "January 1, 2023 – August 2, 2024." (Id. at Exh. B, Rog 1.) She also left due to a "[v]oluntary resignation. Felt the need to move on. Last day worked was July 31, 2024. Employment ended on August 2, 2024." (Id. at Exh. B, Rog 5.)

Both Del Rossi and Barber have not visited or reported to the Forman Mills job site since their last day of work. (Cabrera Decl. at Exhs. A & B, Rog 7.) When asked to identify the names of all class members with whom Plaintiffs have "discussed this lawsuit, the claims that you planned to file in this lawsuit, or the claims that you asserted in this lawsuit," Plaintiffs had the same response: "Plaintiff cannot recall the dates in which she had any communications except that said communications occurred after June 6, 2023. See document production." (Cabrera Decl. at Exhs. A & B, Rog 4.) The first three pages of one production (DBP001 to DBP003) consisted of text messages sent on or around June 8, 2023 about this lawsuit being filed, the next two pages (DBP004 to DBP005) appear to be LinkedIn messages between Barber and Del Rossi, and the remainder of that production are documents from Goode Partners' Form ADV Part 2 Brochure. (Cabrera Decl. at ¶ 5.) The second production produced much of the same messages (NDR0001 to NDR0005), then included new communications with two former Forman Mills employees in June 2023 about the lawsuit being filed as well as text messages with one person after Forman Mills invited employees to return to work and ended with various documents that were not communications to/among proposed class members. (Cabrera Decl. at ¶ 6.)

## III. LEGAL STANDARDS

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)); see also Russell v. Educational Comm'n for Foreign Med. Graduates, 15 F.4th 259, 265 (3d Cir. 2021) (same).

A party seeking class certification "must demonstrate, first, that the requirements of Rule 23(a) are met." Russell, 15 F.4th at 265 (citing Dukes, 564 U.S. at 345). These requirements are often summarized as "numerosity, commonality, typicality, and adequate representation." Dukes, 564 U.S. at 349. Then, a party seeking a class action must meet the requirements of one of the case types listed in Rule 23(b). Russell, 15 F.4th at 266. For Rule 23(b)(3), the requirements are: "questions of law or fact common to class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Valli v. Avis Budget Grp. Inc., 162 F.4th 396, 403 (3d Cir. 2025) (quoting Fed. R. Civ. P. 23(b)(3)).

The "party seeking to certify a class bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." Russell, 15 F.4th at 265 (internal quotation marks and citations omitted). The trial court is to "consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008), as amended (Jan. 16, 2009). "A class may not be certified without a finding that each Rule 23 requirement is met." Id. at 310; see also Russell, 15 F.4th at 266 (quoting Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013)) ("To be a 'class action,' a party must satisfy Rule 23 and all its requirements.").

## IV. ARGUMENT

For class certification to be appropriate, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). Plaintiffs fail to meet the adequacy standard on the papers submitted. Accordingly, the Court should deny the motion for class certification. But, before the Court can even assess adequacy, Plaintiffs' overstatements of the record bear scrutiny.

### A. Plaintiffs' Statement of Facts Repeatedly Overstates The Actual Record

At several places throughout its Statement of Facts (ECF 139-2 at p. 4-5), Plaintiff's motion papers overstate the record and includes citations that do not factually support the listed proposition. The Court should scrutinize these misstatements carefully.

For example, on page 4 of their brief, Plaintiffs assert that "[p]rior to the mass layoff, Forman Mills was owned by Defendant Goode Partners LLC, a New York based private equity firm through its Goode Partners Consumer Fund III, L.P." (ECF 139-2 at 4 (citing Dep. Trans. of David Oddi, ECF 140 (under seal), p. 17 lines 4-22). But what appears on lines 4-22 of page 17 of the transcript from the deposition of Goode Partners LLC's Rule 30(b)(6) designee (David Oddi) is not a statement that Forman Mills was owned by Goode Partners LLC. Mr. Oddi was asked: "With the Forman Mills investment, correct me if I'm wrong but that was purchased through Goode Partners Consumer Fund III, Limited Partnership, correct?" and Mr. Oddi testified: "Goode Partners Consumer Fund III, LP was an indirect investor in Forman Mills, correct." (Oddi. Dep. p. 17, lines 4-9.) Plaintiffs then asked, "When you say indirect investor, can you clarify what you mean by indirect investor?" and Mr. Oddi testified: "Goode Partners

Consumer Fund III purchased a membership interest in Goode Forman Holdings. Goode Forman Holdings purchased a membership interest in, I believe it's called, Forman Mills, Inc. and that is the process under which Goode Partners Consumer Fund III made an indirect investment in Forman Mills." (Oddi Dep. p. 17, lines 10-17.) Notably absent from this testimony is any support for the proposition that "Defendant Goode Partners LLC" "owned" Forman Mills.

As another example, Plaintiffs assert that "Goode Defendants caused the removal of Forman Mills' entire board on May 24, 2023. (ECF 139-2 at 5 (citations omitted).) While it is true that Mr. Oddi and one of his other partners at Goode Partners LLC resigned from their positions at Forman Mills and Mr. Keller was installed on May 24, 2023, this act was not done by the "Goode Defendants" collectively. Instead, "Goode Forman Holdings LLC" and "Goode Heavyweight Co-Invest LLC," acting as the members of Forman Mills Holdings LLC, removed all board members then-existing and appointed Mr. Keller. (Oddi Dep. Exh. 15, FM003128 to FM003129.) "Goode Partners LLC" was nowhere to be found through this action, notwithstanding Plaintiffs' use of the collective "Goode Partners" label in their brief.

Defendants readily concede that Mr. Oddi had a role at Forman Mills, Inc., including service on its board for a period of time, and that Mr. Oddi resigned from the board of Forman Mills (along with any other members of Goode Partners) and installed Tobias Keller as the sole, independent director of Forman Mills on May 24, 2023. But corporate formalities matter—especially in a case where Plaintiffs have sued three entities, repeatedly refer to them collectively as the "Goode Defendants," and seek class certification against all Defendants – even though the record testimony shows how Mr. Oddi and others respected corporate formalities in all respects.

### B. Del Rossi and Barber Cannot Adequately Represent Current Employees of Forman Mills.

To determine whether the adequacy prong of Rule 23(a) is satisfied, "the court must

determine whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 185 (3d Cir. 2001) (citations omitted).[1] This standard is not met because Del Rossi and Barber, as former employees of Forman Mills who voluntarily resigned their employment in August 2024, are in conflict with a proposed class of current employees who remained employed by Forman Mills. [2]

Numerous courts have determined that a proposed class representative who is a former employee (or in a similar role) of a proposed class defendant cannot adequately represent a class that includes current employees (or similar roles) due to a conflict of interest. In Southern Snack Foods, Inc. v. J & J Snack Foods Corp., 79 F.R.D. 678 (D.N.J. 1978), this Court observed that "many cases do hold that a former franchisee cannot represent a class consisting of both former and present franchisees" and held there was "an inherent antagonism between former and present distributors" such that "plaintiff as a former distributor cannot represent a class including the present distributors of defendant." Id. at 680 & 682 (multiple citations omitted). In Southern Snack, the Court found that the current franchisees "depend on the continued economic viability and public goodwill" of the defendant but, "[o]n the contrary, the principal concern of the past distributors is a maximum recovery of money damages, without regard to any adverse impact on the present system." Id. "Therefore, the protection a former licensee may render the class is bound to suffer if not in zealousness then perhaps in overzealousness." Id. (citation and quotations omitted); cf. Rehwaldt v. Elec. Data Sys. Corp., 2005 WL 1130480 at *2-3

---

[1] Defendants do not challenge putative Class Counsel's capability to adequately represent the proposed Classes. Accordingly, this opposition focuses only on the proposed Class Representatives.

[2] If the Court concludes Del Rossi and Barber are not adequate representatives and/or that one or more subclasses are appropriate, the current record is inadequate to determine if the requirements of Rule 23(a) are met for a different representative and/or for subclass(es).

(W.D.N.Y. Apr. 13, 2005) ("Nor would Rehwaldt, the only named plaintiff, be an adequate class representative at this juncture. Given her lack of interest in injunctive relief, Rehwaldt no longer shares the same interests as members of the broadly-defined purported class and no longer has the same incentive with respect to settlement discussions.")

In finding the class representatives were inadequate under Rule 23(a), the Southern Snack Court rejected the plaintiffs' attempts to rely on Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239 (3d Cir. 1975). In Wetzel, the Third Circuit held a former employee who is not entitled to reinstatement "may still be an adequate representative of a class of past and present employees alleging discriminatory employment practices" and found specifically that the interests of the two named former employee plaintiffs "in combatting the sexually discriminatory policies of the Company surely are coextensive with all female technical employees, whether formerly or presently employed." 508 F.2d at 247-48.[3] But the Southern Snack court found that the "very different factual situation of an employment discrimination suit" was enough to distinguish Wetzel, as was the Wetzel's court's determination that the interests of both former and current employees aligned to eliminate discrimination. 79 F.R.D. at 681.

In Oetinger v. First Residential Mortgage Network, Inc., 2009 WL 2162963 (D. Ky. July 16, 2009), seven former mortgage bankers sued their former employer for failure to pay overtime and sought to represent "all present and former Mortgage Bankers" in a collective and class action. Id. at *1. In addressing the adequacy of representation prong of Rule 23(a), the court described "one glaring flaw appears upon even modest examination" because "Plaintiffs are all

[3] The central holding of Wetzel—permitting an across-the-board class action certification in a Title VII employment discrimination case—appears to have been abrogated by subsequent case law. See Hartman v. Duffey, 19 F.3d 1459, 1468-69 (D.C. Cir. 1994) (citing Wetzel for its across-the-board class certification holding but observing that the Supreme Court "effectively repudiated the earlier line of appellate court cases that would automatically certify an across-the-board class based solely upon a complaint alleging group discrimination") .

former mortgage bankers at First Residential, but they seek to join in the class all current mortgage bankers." Id. at *5. The court noted that no current employee sought to join the FLSA claim and that plaintiffs "who have no stake in the ongoing practices of First Residential, do not adequately represent current employees." Id.

In Andrews Farms v. Calcot, Ltd., 2009 WL 1211374 (E.D. Cal. May 1, 2009), the proposed class representative were former members of the defendant, a cotton marketing cooperative that marketed cotton sold by its members. Plaintiffs asserted a cause of action under California law and sought to represent both current and former members of the defendant. After finding that numerosity, commonality, and typicality were met, the court held the plaintiffs were not adequate representatives under Rule 23(a)(4). The court noted that "[a] representative is not adequate if that party is antagonistic or has conflicts with other potential class members." and that "[t]he class representative must not seek relief that favors some class members at the expense of others." Id. at *8 (citing Amchen Prodcs., Inc. v. Windsor, 521 U.S. 591, 626 (1997) & Payne v. Travenol Labs., Inc., 673 F.2d 798, 810-11 (5th Cir. 1992)). The Andrews Farms court then held that the plaintiffs were inadequate class representatives under Rule 23(a)(4):

> A conflict of interest exists between the interests of the class representatives—both former Calcot members—and the interests of current and future Calcot members. As in *Amgen,* potential plaintiffs in this proposed class are divided into discrete, conflicting categories; namely, former Calcot members and current and future Calcot members. As [defendants] point out, significant monetary damages recovered by Plaintiffs may be paid largely by current and future Calcot members. Because former Calcot members do not bear that burden, they have an interest in maximizing the damages award. Conversely, current and future members of Calcot, who may have their damages awards offset by bearing the financial burden of paying for any damages awarded, may be interested to preserve Calcot's funds, even at the expense of their litigating claims. Because of this inherent conflict of interest, the class representatives cannot represent adequately the interests of current and future Calcot members.

2009 WL 1211374 at *11. The court also observed how no current member of the defendant

sought to join the suit, another factor showing the lack of adequacy under Rule 23(a)(4).

Plaintiffs' motion papers provide only cursory treatment of their obligation to show adequacy of representation. Most of their brief on this point addresses the adequacy of proposed Class Counsel—which is not disputed. The portion addressing Del Rossi and Barber's adequacy as class representatives is limited to one sentence asserting that they have no conflicts of interest and their interests are aligned, supported by short declarations. ECF 139-2 at 14 (citing Del Rossi Decl., ECF 139-5, at 3; Barber Decl., ECF 139-6, at 3; Goodley Dec. at ¶ 8). Even those declarations are sparse. Del Rossi asserts only that she is "aware of no conflicts of interest between or among myself, Plaintiff Barber, Goodley McCarthy, Morgan Rooks, or any of the class members." ECF 139-5 at ¶ 3. So does Barber and proposed Class Counsel. ECF 139-6 at ¶ 3; ECF 139-3 at ¶ 8. This is not enough to carry their burden.

Here, Del Rossi and Barber have an inherent conflict of interest due to their status as former employees of Forman Mills. But neither Del Rossi nor Barber acknowledge their voluntarily resignations from Forman Mills in August 2024 in their declarations or address the conflict that arises from trying to represent a class of current employees as a former employee. Much like the former members in Andrews Farms, Del Rossi and Barber "have an interest in maximizing the damages award" – a sharp contrast to "current and former [employees of Forman Mills], who… may be interested to preserve [their current employer's funds], even at the expense of their litigating claims." 2009 WL 1211374 at *11. Similarly, just as the former franchisees in Southern Snack had no interest in the continued viability of their former franchisor and no regard for any adverse impact on the system they had left, Del Rossi and Barber have no interest in the continued viability of Forman Mills. And it is not reasonable for any former employee to have such an interest. Given this limitation, however, Del Rossi and Barber are not adequate

representatives for a class consisting of former *and current* employees of Forman Mills because those current employees are very much interested in the continued viability of their employer and may not have the desire to maximize financial recovery at the expense of their employer's viability.

Despite this lawsuit having been filed in early June 2023, Del Rossi's and Barber's declarations do not identify any current or former employee of Forman Mills that has expressed interest in joining this suit—or even in its outcome. In fact, in their answers to interrogatories, Del Rossi and Barber were both asked to identify the names of all purposed class members with whom they merely *discussed* this lawsuit and both had the same response: "Plaintiff cannot recall the dates in which she had any communications except that said communications occurred after June 6, 2023. See document production." Despite their claims of adequacy of representation for a class of nearly 90 individuals, they do not recall any substantive communications with any of their former colleagues from Forman Mills and their document production reveals no such communications after June 2023.[4] While these facts cast doubt on Plaintiffs' ability to be adequate representatives for *any* class members, it certainly shows they have no *present* ability to represent and speak for the interests of current employees of Forman Mills.

The adequacy of representation analysis is fact- and case-specific, and Defendants readily acknowledge that there may be situations where former employees *can* adequately represent the interests of current employees. Whether Wetzel remains viable or not, both former and current employees have a shared interest in eliminating discrimination (as that case discusses). And, in many WARN cases, the employer has ceased operations or declared bankruptcy—leaving no

---

4 The document production consisted of a few messages exchanged between the two plaintiffs and then communications Del Rossi had in June 2023 with three Forman Mills employees. Cabrera Decl. at ¶¶ 6-7. The document production did not reveal other communications with proposed class members. Id. at ¶ 7.

group of "current" employees that might have separate interests from named plaintiffs. But those situations are factually distinct from the case at bar—where Del Rossi and Barber allege an employment termination in early June 2023, an offer for reinstatement in mid-June 2023, and where Del Rossi, Barber, and most everyone else accepted those offers and resumed employment with Forman Mills. Under the circumstances here, given that Del Rossi and Barber have no current employment at Forman Mills, have not for years, and yet still seek to represent current employees, they are simply not adequate representatives for the classes they propose.

### C. Plaintiffs' Proposed Class Notice Is Premature And Inadequate.

As part of their motion papers, Plaintiffs have requested that the Court unilaterally and immediately approve Plaintiffs' proposed class notice form. ECF 139-2 at 21; see also ECF 139-8 (proposed notice form). But Plaintiffs' proposal is both premature and substantively inadequate for this case. Accordingly, to the extent a class is certified (which it should not be), Defendants ask that the parties be directed to meet-and-confer over the form of notice to be issued, and to submit a proposed stipulation or a letter addressing areas of dispute.

Rule 23 requires a court to give notice for any class certified under Rule 23(b)(3) that is "the best notice that is practical under the circumstances" and which "must clearly and concisely state in plain, easily understood language" seven different pieces of information. Just last year, the Third Circuit reaffirmed that its "cases have recognized the importance of accurate and clear class action notices as a function of due process." Perrigo Institutional Inv. Grp. v. Papa, 150 F.4th 206, 220 (3d Cir. 2025). Among the requirements of Rule 23(c)(2)(B), the notice "must supply class members with enough information to make an informed decision about their rights and how best to protect them." Id.

Plaintiffs' proposed notice (ECF 139-8) suffers from numerous flaws. The introductory section advises the recipient that he/she is a "class member in an unpaid overtime lawsuit." and

the "effect of participation" section references "overtime wage issues." Those references must be removed because they are incorrect. That Plaintiffs fail to accurately describe the basis for the lawsuit in the proposed notice is more than a typo, and although may be easily corrected, still renders the proposed notice inadequate. In addition, the notice asserts that "various entities…who directly or directly [sic] owned Forman Mills: Defendants Goode Partners LLC…Goode Forman Holdings LLC…and Goode Heavyweight Co-Invest LLC…." But there is no evidence in any of the motion papers that Goode Partners LLC ever directly or indirectly owned Forman Mills.

More importantly, Plaintiffs' proposed notice includes no statement that Defendants deny liability, especially on the most pertinent issue here of whether the Goode Defendants (or any of them) were joint employers with Forman Mills. In Martin v. Sprint/United Mgmt. Co., 2016 WL 30334 at *17 (S.D.N.Y. Jan. 4, 2016), the court rejected a proposed notice in a collective action case that provided only a cursory statement that the "[d]efendants deny the Plaintiffs' claims" as inadequate. The Martin court found that other courts "frequently direct plaintiffs to include a more expansive account of defendants' denials, as well as the status of the action, in the introduction section of a collective action notice." The court directed plaintiffs to revise the notice, in consultation with the defense, to "include (1) a more fulsome statement of defendants' positions and defenses, and (2) an explicit statement that the Court has not yet made any determination on the merits of plaintiffs' claims." Here, Plaintiffs' proposed notice does not even provide *cursory* notice that Defendants deny liability and contest the Plaintiffs' allegations—it ignores outright that Defendants have a position on this lawsuit different from Plaintiffs'. To provide adequate notice that is clear and accurate, Defendants' position on liability must be included as well as a notation that the Court has not made factual findings on liability.

Plaintiff's proposed notice includes content that improperly suggests the Court has sided with Plaintiffs in this action. The proposed notice does not include any statement noting the Court's neutrality. Even worse, the proposed notice includes a signature line for the Court, appearing immediately beneath text that reads that the notice was "authorized by the United States District Court for the District of New Jersey." This is improper. "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 174 (1989) (ADEA case). By including a signature for a Judge on the notice—and failing to note that the Court has not taken a position on the merits' of Plaintiffs' claims—the proposed notice gives the appearance of judicial endorsement. It is not reasonable to expect a layperson receiving this proposed notice to know that the phrase "Approved as to form" means that the Court is still neutral. See Wright v. Lehigh Valley Hosp. and Health Network, 2011 WL 221770 at *6 (E.D. Pa. Jan. 20, 2011) (rejecting proposed notice because "the notice fails to inform the recipient that the Court has taken no position on the merits of the lawsuit" and "such a statement must be included.").

While the above-listed flaws all merit correction, Defendants' recitation here is not meant to be all-encompassing. Other areas may need to be revised. Typically, parties are encouraged to meet and confer regarding a class notice plan and proposed notice. See, e.g. Zeno v. Ford Motor Co., Inc., 238 F.R.D. 173, 199 (W.D. Pa. 2006) (following a certification of a class, the court ordered the parties to "promptly meet and confer with respect to a plan of class notice that complied with Rule 23(c)(2)(B)."); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 69 (E.D. Pa. 2009) (same); Henkel v. Highgate Hotels, LP, 2021 WL 2550203 at *13 (M.D. Pa. June 22,

2021) (same); In re Chocolate Confectionary Antitrust Litig., 289 F.R.D. 200, 227 (M.D. Pa. 2012) (same). Accordingly, and to the extent the Court certifies a class of any kind, Defendants suggest that the Court direct the parties to meet-and-confer on a proposed notice form and to submit a stipulation or letter addressing any areas of dispute.

## V. CONCLUSION

For the reasons set forth in this opposition brief, the Court should deny Plaintiffs' motion for class certification.

Respectfully submitted,

COZEN O'CONNOR

*/s/ Jason A. Cabrera*
By: Jason A. Cabrera (NJ 077342013)
1010 Kings Highway South
Cherry Hill, NJ 08034
*Attorneys for Defendants Goode Partners LLC, Goode Forman Holdings LLC, and Goode Heavyweight Co-Invest LLC*