**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **NOELL DEL ROSSI, *et al.*, individually and on behalf of all similarly-situated individuals,** | : | **CIVIL ACTION NO.: 1:23-cv-03136** |
| ***Plaintiffs,*** | : | |
| **v.** | : | |
| **FORMAN MILLS, INC., *et al.*** | : | |
| ***Defendants.*** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Dated: October 30, 2026

**GOODLEY MCCARTHY LLC**
James E. Goodley
NJ Attorney ID: 048572013
james@gmlaborlaw.com
Ryan P. McCarthy
NJ Attorney ID: 219022016
ryan@gmlaborlaw.com
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 394-0541

**MORGAN ROOKS, P.C.**
Franklin J. Rooks, Jr., Esquire
NJ Attorney ID: 023802010
525 Route 73 North, Suite 104
Marlton, NJ 08053
Telephone No. (856) 874-8999
Facsimile No. (856) 494-1707
fjrooks@morganrooks.com

*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS


**I. INTRODUCTION** ..... 1

**II. STATEMENT OF FACTS** ..... 3

**III. ARGUMENT** ..... 5

- **A. STANDARD ON SUMMARY JUDGMENT** ..... 5
- **B. SUMMARY JUDGMENT SHOULD BE GRANTED** ..... 6
  - **1. The Court Has Already Determined an "Employment Loss" Occurred and thus the Burden is on Defendants to Show an Affirmative Defense Applies** ..... 6
  - **2. Defendant Keller Personally Ordered the Mass Layoff to Occur and thus Is Personally Liable Under NJ WARN** ..... 7
  - **3. The Goode Defendants are Liable Under Fed WARN and NJ WARN as a Single Employer Under *Pearson*** ..... 8
  - **4. The Goode Defendants are Liable Under NJ WARN as they Directly or Indirectly Owned and Controlled Direct Employer Forman Mills and the Acted in Concert to Cause the Mass Layoff to Occur** ..... 10
  - **5. Damages** ..... 12

**IV. CONCLUSION** ..... 13

# TABLE OF AUTHORITIES

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................5

*Chambers ex rel. Chambers v. Sch. Dist. Phila. Bd. of Educ.*,
587 F.3d 176 (3d Cir. 2009) ....................6

*Del Rossi v. Forman Mills, Inc., No. 23-3136 (RBK/AMD)*,
2024 U.S. Dist. LEXIS 85786 (D.N.J. May 13, 2024) ....................7

*Masushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ....................5

*Pearson v. Component Tech. Corp.*,
247 F.3d 471 (3d Cir. 2001) ....................2, 8, 10

*Sheppard v. Variant Equity Advisors, LLC*,
2025 LX 680061 at *6-7 (D.N.J. Dec. 22, 2025) ....................11, 12

*United Steelworkers of Am. v. North Star Steel Co.*,
5 F.3d 39 (3d Cir. 1993) ....................2, 12

**Statutes:**

29 U.S.C. § 2101 ....................1

29 U.S.C. § 2104 ....................12

N.J. Stat. § 34:21-1, et seq. ....................1

N.J.S.A. § 34:21-2 ....................1, 2, 7, 8, 12

NJ Rev Stat § 34:21-2 ....................10, 11

**Rules:**

Fed. R. Civ. P. 56 ....................5

Click or tap here to enter text.

## I. INTRODUCTION

Plaintiffs Noell Del Rossi and Dawn Barber hereby submit their Motion for Summary Judgment. More than two years ago, the Court, per Judge Kugler, denied Forman Mills' Motion for Summary Judgment, most notably finding that an "employment loss" had occurred resulting from Forman Mills' June 2023 mass layoffs. See generally, **ECF No. 31**. Aside from the issue of class certification, which remains pending for the Court's ruling, the only issues left for decision in this case are which Defendants are liable under Federal WARN, 29 U.S.C. § 2101, *et seq.* ("Fed WARN") and/or NJ WARN, N.J. Stat. § 34:21-1, *et seq*. (collectively the "WARN Acts"), and the amount of damages.

As to Forman Mills, for purposes of this Motion, Plaintiffs assume class certification will be granted, and thus move for a class wide monetary judgment in the amounts shown in the proposed Order and Judgment and Plaintiffs' Damages Spreadsheet, **Ex. 4**.

As to Defendant Tobias Keller, Plaintiffs move for summary judgment against him on a class basis for liability and damages, under NJ WARN only. NJ WARN's broad definition of "employer" N.J.S.A. § 34:21-2(d), which "includes any individual … or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, and includes **any person who … makes the decision** responsible for the employment action that gives rise to a mass layoff subject to notification." (emphasis added). Defendant Keller was the person who, as so-called "independent director" of Forman Mills in May and June 2023, "ma[de] the decision responsible for the employment action that [gave] rise to a mass layoff subject to notification." **SUMF[1] ¶¶ 51-52.** As there was an employment loss due to Forman Mills' mass

[1] "SUMF" refers to Plaintiffs' Statement of Undisputed Material Facts, filed concurrently with this Motion.

layoff (carried out by its then-agent Keller), Keller is personally liable to Plaintiffs and the Class for the NJ WARN liability.

As to Defendants Goode Partners LLC, Goode Forman Holdings, LLC, and Goode Heavyweight Co-Invest, LLC (jointly the "Goode Defendants"), Plaintiffs move for summary judgment against these defendants for liability and damages under Fed WARN and NJ WARN. The record demonstrates that the Goode Defendants and other intermediary affiliates were in reality commonly directed, controlled and owned by Goode Partner principals Daniel Bonoff, David Oddi, and Joe Ferreira. **SUMF ¶¶ 9-42.** The Goode Defendants were therefore a, "... group of persons acting directly or indirectly in the interest of an employer in relation to an employee, [including] any person who, directly or indirectly, owns and operates the nominal employer" (including through intermediate corporate subsidiaries). N.J.S.A. § 34:21-2(d). Plaintiffs also seek liability against Goode Defendants under Fed WARN and NJ WARN under the single employer doctrine, as Goode Defendants were integrated with Forman Mills. See *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 495 (3d Cir. 2001) (holding, "[a]ffiliated corporate liability [exists] under the [Fed] WARN Act" where on the whole, a non-exclusive multi-factor balancing test analysis "demonstrate[s]: (1) common ownership, (2) common directors and/or officers, (3) de facto exercise of control, (4) unity of personnel policies emanating from a common source, and (5) the dependency of operations.").

The damages available under FedWARN for a notice violation is 60 times a working day's compensation (as opposed to a 60-day period of lost earnings). *See United Steelworkers of Am. v. North Star Steel Co.*, 5 F.3d 39, 42 (3d Cir. 1993). By contrast, NJ WARN provides four weeks of compensation in the event of a notice violation, and separately severance pay of one week of compensation per year of service (regardless of whether there is a notice violation). N.J.S.A.

34:21-2(b). As the notice violation under FedWARN is higher than under NJ WARN, Plaintiffs base their damages against Forman Mills and the Goode Defendants on the FedWARN notice penalty and the NJ WARN severance provision (which are separate and nonduplicative remedies). Since Defendant Keller is liable under NJ WARN only, his liability as to each Class Member is a four-week notice penalty and severance.

Plaintiffs therefore respectfully request that the Court grant Plaintiffs' Motion for Summary Judgment as outlined in the proposed form of order filed herewith.

## II. STATEMENT OF FACTS

Plaintiffs Noell Del Rossi ("Plaintiff Del Rossi"), Dawn Barber ("Plaintiff Barber") and approximately 117 other individuals were employed by Defendant Forman Mills, Inc. ("Forman Mills") at its Pennsauken, New Jersey corporate headquarters. **SUMF[2] ¶ 1.** On June 6, 2023, Forman Mills first informed Plaintiffs and the other Class Members that their employment was terminated immediately. **SUMF ¶ 2.** Shortly after the meeting concluded Forman Mills circulated an email to the terminated employees which stated, "[b]ased on the economic circumstances and operational needs of the business, your position has been eliminated." Forman Mills' email to the terminated employees also stated that, "[u]nfortunately, given the economic circumstances of the business there will not be severance paid at this time," and further informing them to apply for unemployment and return company equipment. **SUMF ¶¶ 2-5.** At the time of the mass termination, Forman Mills informed the employees that no decisions had been made with respect to a bankruptcy filing and Forman Mills had not sold its business or otherwise informed its employees that a successor organization had been identified. **SUMF ¶¶ 6, 8.** After the 89 Class

[2] "SUMF" refers to Plaintiffs' Statement of Undisputed Material Facts, filed with this Motion.

Member employees were terminated in a mass layoff, Forman Mills' headquarters continued to operate with at least 31 remaining employees. **SUMF ¶ 7.**

Defendant Goode Partners, LLC is a New York based private equity firm with principals Daniel Bonoff, David Oddi (managing member), and Joe Ferreira. **SUMF ¶¶ 9-10**. Bonoff, Oddi and Ferreira were the owners of Goode Investors III, LP, which was the general partner of Goode Partners Consumer Fund III LP, which in turn acquired Forman Mills in 2016 via Defendants Goode Forman Holdings, LLC, and Goode Heavyweight Co-Invest, LLC. **SUMF ¶¶ 11-13**. Goode Investors III, LP made all made "all ultimate investment decisions" for Goode Partners Consumer Fund III LP and possessed authority to act on the fund's behalf. **SUMF ¶ 14**. Defendant Goode Partners LLC provided advisory services to Forman Mills (including placing executives at the company, reviewing financial performance, budgeting, interfacing on its behalf with lenders and developing reporting procedures) and received management fees in exchange for these services and others provided to Goode Partners Consumer Fund III LP. **SUMF ¶¶ 15, 16, 28-30, 35, 38**. Goode Partners Consumer Fund III LP operated without any employees and no physical office of its own, though it received correspondence at Goode Partners LLC's address. **SUMF ¶ 17**.

During all relevant time periods, Goode Partners principal David Oddi was president of Forman Mills. **SUMF ¶ 18**. The Goode Defendants appointed and controlled the board of directors of Forman Mills and installed Mike Kvitko as its CEO. **SUMF ¶¶ 19-20**. Oddi was also signatory on a 2016 Deposit Account Control Agreement between Forman Mills and Encina Business Credit LLC, signing on behalf of Goode Partners Consumer Fund III. **SUMF ¶ 41**. After January 2021, Goode Consumer Fund III LP and potentially members of Goode Heavyweight Coinvest LLC made infusions of capital into Forman Mills to improve its liquidity position.

**SUMF ¶ 40**. In 2023, Kevin Hess, Forman Mills CFO, had weekly conversations with Goode Partners principals Oddi and Ferreira concerning store performance in 2023. **SUMF ¶¶ 32, 33**. Joe Ferreira was actively involved with Forman Mills personnel and compensation decisions, and on May 11, 2023, stated to lenders that they were "scrambling to make payroll this week." **SUMF ¶¶ 34, 39, 42**. Ferreira's and Oddi's involvement with Forman Mills was more hands on in 2023 than previously. **SUMF ¶ 36**.

On May 24, 2023, a mere two weeks before the mass layoff, Goode Defendants removed Forman Mills' entire board and replaced it with a sole director, Defendant Tobias Keller. **SUMF ¶¶ 22-23, 31, 44-46**. Defendant Keller was unwilling to take the director assignment unless Goode Defendants indemnified him for WARN liabilities, which was agreed upon. **SUMF ¶¶ 24, 47-50**. The day before the June 6, 2023 mass layoff, Defendant Keller sent an email to Defendant Goode Partners telling them "…we need to commence the RIF." **SUMF ¶ 52**. Then, on June 6, Defendant Keller personally authorized the mass layoff. **SUMF ¶¶ 51, 52**.

## III. ARGUMENT

### A. STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that the record reveals no genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). If the burden is met, the nonmoving party must set forth specific facts in the record showing that there is a genuine issue for trial. *Masushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). "In determining whether [summary judgment] is warranted, [t]he evidence of the nonmovant is to

be believed, and all justifiable inferences are to be drawn in his favor." *Chambers ex rel. Chambers v. Sch. Dist. Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009).

### B. SUMMARY JUDGMENT SHOULD BE GRANTED

Here, there are no genuine disputes of material fact as to all elements of Plaintiffs' and the Classes' WARN claims against Defendants: (1) as previously held by Judge Kugler, **ECF No. 31**, there was an employment loss and a mass layoff on June 6, 2023, affecting 89 of the 120 employees at Forman Mills' Facility; (2) on May 24, 2023, the Goode Defendants fired the entire Forman Mills board of directors and installed Defendant Tobias Keller as the entity's sole "independent director," **SUMF ¶¶ 22-23, 31, 44-46**; (3) on June 6, 2023, a mere two weeks later, Keller personally terminated the employment of all 89 members of the Class, **SUMF ¶¶ 51, 52**; (4) thereafter Forman Mills continued operations, including at the Facility with reduced staff (i.e., a mass layoff, not a plant closing occurred), **SUMF ¶ 7**; (5) during all relevant time periods Defendants Goode Forman Holdings, LLC and Goode Heavyweight Co-Invest, LLC directly or directly owned and controlled Forman Mills, **SUMF ¶ 31**; (6) during all relevant time periods, Goode Partners LLC acted as the investment advisor to Goode Consumer Fund III LP, the entity which owned (through Goode Forman Holdings and Goode Heavyweight Co-Invest) Forman Mills, **SUMF ¶¶ 16, 29**; (7) during all relevant time periods, Goode Partners principals Daniel Bonoff, David Oddi (managing member), and Joe Ferreira possessed ownership interests in each of the Goode Defendants, Goode Consumer Fund III LP, and Goode Investors III, LP (and thus indirectly in Forman Mills), as well as ultimate authority to control and manage the affairs of each of the Goode Defendants, other Goode affiliates, and Forman Mills, including financial control and budgeting, as well as control over compensation decisions. **SUMF ¶¶ 11-16, 28-30, 35, 38**.

#### 1. The Court Has Already Determined an "Employment Loss" Occurred and thus the Burden is on Defendants to Show an Affirmative Defense Applies

On May 13, 2024, this Court, per Kugler, J., rejected Forman Mills' argument that no employment loss occurred, even though Forman Mills was sold to a new buyer two weeks later (and after this lawsuit was filed, provided affected employees backpay for those two weeks). The Court conclusively held "Plaintiffs prevail in their argument that an employment loss occurred." *Del Rossi v. Forman Mills, Inc.*, No. 23-3136 (RBK/AMD), 2024 U.S. Dist. LEXIS 85786, at *18-19 (D.N.J. May 13, 2024). The Court reasoned that it would "decline[] to extend the [WARN sale-of-business] exclusion substantially further than has any other court," and stated that "Plaintiffs' position better accords with the statutory language." *Id.* This core issue in the case having been decided leaves only the questions of *which* Defendants are jointly liable for Forman Mills' WARN debt, as well as the amount of damages.

### 2. Defendant Keller Personally Ordered the Mass Layoff to Occur and thus Is Personally Liable Under NJ WARN

NJ WARN's broad definition of "employer" N.J.S.A. § 34:21-2(d), "includes any individual … or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, and includes **any person who … makes the decision** responsible for the employment action that gives rise to a mass layoff subject to notification." (emphasis added). Defendant Keller was the person who, as so-called "independent director" of Forman Mills from May 23, 2023 through the June 6 mass layoff, admits he was "certainly part of the process" behind the decision to terminate the class members, and stated the day before the layoff that "we need to commence the RIF." **SUMF[3] ¶¶ 51-52.** It is therefore abundantly clear that Keller "ma[de] the decision responsible for the employment action that [gave] rise to a mass layoff subject to notification." N.J.S.A. § 34:21-2(d). As there was an employment loss due to

[3] "SUMF" refers to Plaintiffs' Statement of Undisputed Material Facts, filed concurrently with this Motion.

Forman Mills' mass layoff (carried out by its then-agent Keller), Keller is personally liable to Plaintiffs and the Class for the NJ WARN liability.

### 3. The Goode Defendants are Liable Under Fed WARN and NJ WARN as a Single Employer Under *Pearson*

As to both the FedWARN and NJ WARN[4] claims, Goode Defendants are collectively alleged to comprise a single employer (integrated enterprise). See *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 495 (3d Cir. 2001) (holding, "[a]ffiliated corporate liability [exists] under the WARN Act" where on the whole, a non-exclusive multi-factor balancing test analysis "demonstrate[s]: (1) common ownership, (2) common directors and/or officers, (3) de facto exercise of control, (4) unity of personnel policies emanating from a common source, and (5) the dependency of operations."). Similarly, as discussed below, the record shows that each of the Goode Defendants were integrated, along with Forman Mills as a single integrated entity. Each factor is addressed in turn:

<u>Common Ownership</u>

At the time of the mass layoff, each of the Goode Defendants were under common ownership with Forman Mills, via Goode Partners' principals/members David Oddi, Daniel Bonoff, Joe Ferreira and Keith Miller. Mr. Oddi testified as Rule 30(b)(6) designee of Goode Partners, that Forman Mills (the portfolio company) was owned by Forman Mills Holdings, LLC, which in turn was owned by Goode Consumer Fund III LP, which in turn was owned by Goode Investors III, LP, which in turn was approximately 90% owned by Goode Partners principals Oddi,

[4] Although Plaintiffs' primary theory of liability under NJWARN against Goode Defendants is based on the textual definition of employer in N.J.S.A. § 34:21-2(d), Plaintiffs alternately assert this state law claim under the single-employer theory.

Bonoff, Ferreira, and Miller, with the remaining 10% owned by employees of Goode Partners. **SUMF ¶ 26.**

Common Directors/Officers

The Goode Defendants and Forman Mills had common board members and officers. For example, Goode Partners principals Oddi, Bonoff and Ferreira were each board members of Forman Mills. Oddi also served as the president of Forman Mills and Forman Mills Holdings, LLC. **SUMF ¶ 27.**

Exercise of Control

Goode Investors III, LP made all made "all ultimate investment decisions" for Goode Partners Consumer Fund III LP and possessed authority to act on the fund's behalf. **SUMF ¶ 14**. Defendant Goode Partners LLC provided advisory services to Forman Mills (including placing executive at the company, reviewing financial performance, budgeting interfacing on its behalf with lenders and developing reporting procedures) and received management fees in exchange for these services and others provided to Goode Partners Consumer Fund III LP. **SUMF ¶¶ 15, 16, 28-30, 35, 38**. Goode Partners Consumer Fund III LP operated without any employees and no physical office of its own, though it received correspondence at Goode Partners LLC's address. **SUMF ¶ 17**. Goode Partners principals Oddi, Bonoff, and Ferreira directed the affairs of each of these Goode affiliates, and directed these entities to exercise the aforementioned control of Forman Mills.

Unified Personnel/HR Policies

Goode Partners principal Joe Ferreira actively involved himself in Forman Mills' personnel decisions, including compensation decisions. **SUMF ¶ 34**. Joe Ferreira worked with Kevin Hess and Mike Kvitko on solvency issues with Forman Mills' operations, including those relating to

labor expenses, and on May 11, 2023, Ferreira, "scrambl[ed] to make payroll this week" for Forman Mills. **SUMF ¶ 39**.

Dependency of Operations

Forman Mills was financially dependent on the Goode Defendants and their affiliates for their existence. For example, Oddi was also signatory on a 2016 Deposit Account Control Agreement between Forman Mills and Encina Business Credit LLC, signing on behalf of Goode Partners Consumer Fund III. After January 2021, Goode Consumer Fund III LP and potentially members of Goode Heavyweight Coinvest LLC made infusions of capital into Forman Mills to improve its liquidity position. As soon as Goode refused to continue committing capital and Forman Mills' lender declared a default, Joe Ferreira "scrambl[ed] to make payroll this week" for Forman Mills. **SUMF ¶¶ 39-42.**

Given that (1) *Pearson's* "'factors' are a nonexhaustive list" and "the inquiry is a balancing test," 247 F.3d at 490, and (2) Plaintiff has demonstrated strong evidence on each factor, it is clear that the factual record demonstrates the Goode Defendants and Forman Mills constitute an integrated entity (or "single employer").

**4. The Goode Defendants are Liable Under NJ WARN as they Directly or Indirectly Owned and Controlled Direct Employer Forman Mills and the Acted in Concert to Cause the Mass Layoff to Occur**

In enacting the amended NJ Rev Stat § 34:21-2(e) it is clear the legislature meant to impose derivative liability against private equity entities like Goode Partners LLC and ease the risk of loss away from innocent workers who were laid off without notice and/or not provided severance pay. This amendment was enacted in response to the New Jersey Toys-R-Us bankruptcy,[5] in which a

[5] See, e.g., Industrial Equipment News, Jan. 22, 2020, "N.J. Becomes 1st State to Mandate Severance Pay for Mass Layoffs." *Available at:* https://www.ien.com/regulation/news/21111730/nj-becomes-1st-state-to-mandate-severance-pay-for-mass-layoffs ("The legislation was motivated by last year's closing of Toys R Us, which

private equity firm was able to profit handsomely from its advisory fees and from previous upside, and then walk away from its failed investment without financial responsibility to Toys-R-Us employees. See also **Ex. 5**, Senate Commerce Committee Statement to Senate Bill 3170. Although this amendment is relatively new and has little associated case law, the broad definition of employer in NJ Rev Stat § 34:21-2(d) supports the idea that the legislature intended private equity to bear responsibility for mass layoffs like the one in this case. See *Sheppard v. Variant Equity Advisors*, LLC, 2025 LX 680061 at *6-7 (D.N.J. Dec. 22, 2025) ("Here, under the plain language of the NJ WARN Act, Plaintiffs have sufficiently pled that Variant Advisors and Variant Equity I are 'employers' liable for WARN Act violations. As to ownership, Plaintiffs have alleged that Variant Advisors is the majority shareholder of Variant Equity I, and in April 2019, Variant Advisors, though its investment fund, Variant Equity I, purchased Coach [the portfolio company]. That is sufficient to satisfy the requirement that the two corporate entities 'directly or indirectly own' Coach or own a corporate subsidiary that, directly or indirectly, owns or operates Coach.").

Here, the principals of Defendant Goode Partners LLC set up vacuous, employee-less, office-less, **SUMF ¶ 17**, (and by now, likely asset-less) shell companies such as Goode Forman Holdings, LLC and Goode Heavyweight CoInvest, LLC and Goode Partners Consumer Fund III, LP as being the only parties who might be liable for a judgment under NJ WARN. However, it is clear that these entities were all directed by the same people: Oddi, Bonoff and Ferreira, of Goode Partner LLC, the investment advisor to Goode Partners' investment funds such as Goode Partners Consumer Fund III. **SUMF ¶¶ 11-16, 28-31, 35, 38**. It is also clear that each of these entities and

cost 2,000 employees their jobs in New Jersey ... 'When these corporate takeover artists plunge the companies into bankruptcy they walk away with windfall profits and pay top executives huge bonuses, but the little guys get screwed,' said Democratic state Sen. Joe Cryan, who was a co-sponsor of the measure.'").

Goode Partners were in effect one and the same, ultimately owned and controlled by the same principals of Goode Partners, who also exerted great control over Forman Mills' finances, employee compensation, and the ultimate mass layoff. *Id*.

**5. Damages**

The damages available under FedWARN for a notice violation is 60 times a working day's compensation (as opposed to a 60-day period of lost earnings). *See United Steelworkers of Am. v. North Star Steel Co*., 5 F.3d 39, 42 (3d Cir. 1993). By contrast, NJ WARN provides four weeks of compensation in the event of a notice violation, and separately severance pay of one week of compensation per year of service (regardless of whether there is a notice violation). N.J.S.A. 34:21-2(b). As the notice violation under FedWARN is higher than under NJ WARN, Plaintiffs base their damages on the FedWARN notice penalty and the NJ WARN severance provision (which are separate and nonduplicative remedies). The WARN notice penalty backpay is calculated at higher of: the *average* regular rate of the last three years or the *final* regular rate, plus employer-paid health/retirement benefits. See 29 U.S.C. § 2104(a)(1); N.J.S.A. § 34:21-2(b).

In **Exhibit 4**, based on Forman Mills' employment and compensation records for the Class, Plaintiffs calculate WARN damages by applying simple arithmetic to each Class Member's compensation. **Goodley Decl. ¶¶ 3-9**. Because 2020, 2021, and 2023 health benefits paid by Forman Mills were not provided, Plaintiffs use 2022 total compensation (rather than the average of the last three years), except for those 17 Class Members who began their employment in 2022 or later, where 2023 annual salary data only was used. **Goodley Decl. ¶¶ 3-5**.

Plaintiffs respectfully request the entry of summary judgment in the following amounts, against the following Defendants, as provided in the proposed Order and Judgment:

Forman Mills and Goode Defendants:

Fed WARN notice penalty of **$2,227,404.10** plus prejudgment interest of **$682,134.88.**

and NJ WARN severance of **$1,313,856.13** plus prejudgment interest of **$402,363.94.**

Tobias Keller (NJ WARN notice penalty and severance):

NJ WARN notice penalty of **$745,323.68** plus prejudgment interest of **$228,252.82.**

and NJ WARN severance of **$1,313,856.13** plus prejudgment interest of **$402,363.94.**

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Partial Motion for Summary Judgment.

Dated: October 30, 2026

/s/ James E. Goodley
**GOODLEY MCCARTHY LLC**
James E. Goodley
NJ Attorney ID: 048572013
james@gmlaborlaw.com
Ryan P. McCarthy
NJ Attorney ID: 219022016
ryan@gmlaborlaw.com
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 394-0541

/s/ Franklin J. Rooks, Jr.
**MORGAN ROOKS, P.C.**
Franklin J. Rooks, Jr., Esquire
NJ Attorney ID: 023802010
525 Route 73 North, Suite 104
Marlton, NJ 08053
Telephone No. (856) 874-8999

Facsimile No. (856) 494-1707
fjrooks@morganrooks.com

*Attorneys for Plaintiffs and the Class*