**BLANK ROME LLP**
*A Pennsylvania LLP*
Jonathan M. Korn
New Jersey Resident Partner
Anthony A. Mingione
Michael R. Darbee
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Tel: (609) 750-2649
Jonathan.Korn@BlankRome.com
Anthony.Mingione@BlankRome.com
Michael.Darbee@BlankRome.com
*Attorneys for Defendant Forman Mills, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NOELL DEL ROSSI and DAWN BARBER, individually and on behalf of all similarly-situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>FORMAN MILLS, INC.; GOODE PARTNERS LLC; GOODE FORMAN HOLDINGS LLC; GOODE HEAVYWEIGHT COINVEST LLC; and TOBIAS KELLER,<br><br>Defendants. | Civil Action No. 1:23-cv-03136 (CPO)(AMD)<br><br>**DEFENDANT FORMAN MILLS, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS** |

Defendant Forman Mills, Inc. ("Forman Mills"), by and through its undersigned counsel, respectfully submits the following additional Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1 of the United States District Court for the District of New Jersey in support of its Motion for Summary

Judgment. Each of the following facts is material and not genuinely in dispute. Citations to "Ex. __" refer to the exhibits attached to the Certification of Anthony A. Mingione, Esq., submitted herewith.[1]

## A. The Parties and Forman Mills' Operations

13. Before June 20, 2023, Forman Mills was a portfolio company of Goode Partners, LLC ("Goode Partners"), which acquired the Company in or around October 2016. (Ex. A (Hess Dep.), pp. 15:25–16:4; Ex. B, Transcript of Deposition of David Oddi ("Oddi Dep."), 66:25–67:2.)

14. David Oddi is a co-founder and partner of Goode Partners and testified as the corporate representative of Goode Partners. (Ex. B (Oddi Dep.), pp. 7:20–8:9, 12:8–10.)

15. On June 30, 2025, Forman Mills relocated its Corporate Office to 3000 Cindel Drive, Cinnaminson, New Jersey. (Certification of Rosa Rosario, dated October 29, 2026 ("Rosario Cert."), ¶ 4.)

16. Kevin Hess ("Hess") served as Forman Mills' Chief Financial Officer from approximately September 2022 until March 2024, and previously served as its Controller from approximately July 2018 until September 2022. (Ex. A (Hess Dep.), pp. 8:15–9:14, 11:6–13, 15:12–14.)

[1] Facts 1 through 12 are contained in Defendants' Common Statement of Undisputed Material Facts in Support of their Motions for Summary Judgment, dated October 30, 2026.

17. Hess testified as the designated representative of Forman Mills. (Ex. A (Hess Dep.), pp. 8:15–18.)

18. Plaintiff Noell Del Rossi ("Del Rossi") was hired by Forman Mills on or about September 13, 2021. (Ex. C (Hess Cert.), ¶ 3; Ex. H (Interrogatory Answers of Nicole Del Rossi (Del Rossi Rog. Ans.) No. 1.)

19. Del Rossi was employed at the Corporate Office in the Merchandising department, first as a Merchandise Assistant and later as an Assistant Buyer. (Ex. H (Del Rossi Rog. Ans.) No. 1.)

20. Plaintiff Dawn Barber ("Barber," and together with Del Rossi, "Plaintiffs") was hired by Forman Mills in July 2013. (Ex. C (Hess Cert.) ¶ 4.)

21. Barber was employed at the Corporate Office in the Planning department in the position of Merchandise Data Entry. (Ex. G (Barber Payroll Records); Ex. I (Dawn Barber Interrogatory Answers ("Barber Rog. Ans.")), No. 1.)

22. In 2023, Del Rossi was paid $21.3416 per hour and Barber was paid $17.50 per hour. (Ex. D (Hess Decl.), Exs. A–B.)

**B. Forman Mills' Financial Condition in the Spring of 2023**

23. Prior to May 2023, the Company's board of directors consisted of Mr. Oddi, Joe Ferreira, Daniel Bonoff, and Mike Kvitko. (Ex. B (Oddi Dep.), pp. 95:9–17.)

24. In the first quarter of 2023, the Company operated approximately 45 retail stores, a corporate office in Pennsauken, New Jersey, and a distribution center in Cinnaminson, New Jersey. (Ex. A (Hess Dep.), pp. 89:8–10, 90:1–11.)

25. As of the first quarter of 2023, the Company had approximately 2,200 employees company-wide. (Ex. A (Hess Dep.), pp. 90:12–15.)

**C. The Company's Credit Facilities**

26. The Company had a revolving, asset-based line of credit with Encina Business Credit, LLC, which later became known as Eclipse Business Capital ("Eclipse" or "Encina"), and term debt from Monroe Capital ("Monroe") that was subordinated to the Eclipse revolver. (Ex. A (Hess Dep.), pp. 48:12–18, 50:6–13; Ex. B (Oddi Dep.), pp. 138:18–22.)

27. The amount the Company could borrow under the Eclipse revolver was determined by a borrowing base calculated from the Company's inventory and receivables. (Ex. A (Hess Dep.), pp. 48:22–49:10, 50:14–51:3; Ex. B (Oddi Dep.), pp. 114:1–13.)

28. Under a lockbox arrangement, the Company's cash receipts were swept daily to pay down the Eclipse revolver, and the Company submitted draw requests against the revolver to fund payroll and other disbursements. (Ex. A (Hess Dep.), pp. 49:15–50:5; Ex. B (Oddi Dep.), pp. 137:24–138:3.)

29. Under the credit agreement, cash that came into the Company was "immediately effectively secured by Encina and not available to Forman Mills, itself, without Encina's consent." (Ex. B (Oddi Dep.), pp. 131:3–6.)

30. The Company's credit agreements contained a cross-default provision under which a default under the Monroe agreement would trigger a default under the Encina agreement. (Ex. B (Oddi Dep.), pp. 110:18–111:14, 141:19–23.)

**D. The Company's Developing Financial Condition**

31. During 2020 and part of 2021, while government stimulus payments were being made, the Company's business performance was strong. (Ex. A (Hess Dep.), pp. 63:20–64:7, 77:19–78:1.)

32. After the stimulus payments ended, the Company's sales declined over the course of 2022, and its total available liquidity decreased over the course of that year. (Ex. A (Hess Dep.), pp. 64:7–65:8, 68:4–12.)

33. Hess testified that in mid- to late 2022 there were "some challenges," but that the Company "still had availability," such that "it wasn't a crisis at that point." (Ex. A (Hess Dep.), pp. 62:21–63:4.)

34. In or around September 2022, Monroe agreed to defer principal payments on its notes. (Ex. A (Hess Dep.), pp. 65:11–20.)

35. As of February 6, 2023, the Company's liquidity was "tight," but there "hadn't been a default or issues with Eclipse," and the Company was "in good standing" with Eclipse. (Ex. A (Hess Dep.), pp. 80:4–81:1.)

36. During the first quarter of 2023, the Company had approximately $2 million to $4 million of availability under its credit facility. (Ex. A (Hess Dep.), pp. 85:11–18.)

37. The Company did not have issues making payroll before the March–April 2023 time frame. (Ex. A (Hess Dep.), pp. 69:2–7.)

38. Around the end of March or early April 2023, the Company sought additional capital from Goode Partners, Monroe, and Eclipse, but was not able to obtain additional capital from any of them. (Ex. A (Hess Dep.), pp. 69:11–70:20.)

39. Eclipse/Encina imposed additional reserves on the Company's borrowing base, which "further tightened [the Company's] available liquidity." (Ex. A (Hess Dep.), pp. 50:6–13, 69:20–25, 74:19–23.)

40. Oddi testified that the Company's financial status as of April 27, 2023 was "very precarious because Encina was unwilling to allow the company to drawdown under its credit agreement." (Ex. B (Oddi Dep.), pp. 122:9–14.)

41. On April 27, 2023, Forman Mills entered into Waiver and Amendment No. 14 to its credit agreement with Monroe Capital, which required the Company to

engage an investment banker to conduct a sale process. (Ex. A (Hess Dep.), pp. 82:2–12; Ex B (Oddi Dep.), pp. 119:10–120:5, 122:18–123:11.)

42. Amendment No. 14 included a covenant requiring the Company to engage an investment banker to conduct a sale process, and the Company engaged the investment bank Threadstone at or around that time. (Ex. B (Oddi Dep.), pp. 122:18–123:11, 128:1–9.)

43. The lenders also required the Company to engage a financial advisor, and Forman Mills engaged the Clear Thinking Group in April 2023. (Ex. B (Oddi Dep.), pp. 131:22–132:3, 133:19–22; Ex. A (Hess Dep.), pp. 161:19–162:6.)

44. Under a process managed by Clear Thinking Group, certain expenditures, including payroll, were submitted to Encina/Eclipse for approval. (Ex. B (Oddi Dep.), pp. 131:9–13.)

45. Encina/Eclipse imposed a limit on how much cash it would allow Forman Mills to use each week, whether for payroll, other expenses, or merchandise purchases. (Ex. B (Oddi Dep.), pp. 138:9–13.)

46. Oddi testified that Encina/Eclipse, "unexpectedly refused to allow Forman Mills to drawdown under its revolving credit agreement that it had expected to be able to access." (Ex. B (Oddi Dep.), pp. 130:21–25.)

47. Oddi also testified that, as of May 2023, the Company had borrowing base available to fund its cash needs, but that funding was "effectively at the

discretion of Encina," which "made planning fairly difficult as to whether or not we were going to have cash to fund the company's needs." (Ex. B (Oddi Dep.), pp. 140:23–141:11; 142:2–7.)

48. During this period, the Company was monitoring the latest sales trends and expenditures on a daily basis to ensure that it would be able to continue to operate. (Ex. B (Oddi Dep.), pp. 136:2–8, 136:15–19.)

49. By letter dated May 15, 2023, the Company received a notice of events of default and reservation of rights imposing the default interest rate under the Eclipse credit agreement, effective May 15, 2023. (Ex. B (Oddi Dep.), pp. 139:7–18.)

50. Oddi testified that the cash-access issue was "specifically Encina, not Monroe because Encina was determining what cash they would provide the company access to." (Ex. B (Oddi Dep.), pp. 189:3–5.)

51. Oddi testified that the Company was dealing with banks that were "very unpredictable as to . . . whether or not they were going to provide cash" and with a buyer that was "extremely difficult to deal with," and that "until the ink met the paper, we were unclear as to whether that deal was going to be consummate[d]." (Ex. B (Oddi Dep.), pp. 176:13–24.)

52. Effective on or about May 24, 2023, the Goode Partners-affiliated members of Forman Mills' board resigned, and Tobias Keller ("Keller") became

Forman Mills' sole, independent director. (Ex. A (Hess Dep.), pp. 146:11–147:25; Ex. B (Oddi Dep.), pp. 150:4–21, 166:4–6, 170:18–23.)

53. In late May and early June 2023, Forman Mills was simultaneously attempting to sell the Company and preparing for a potential bankruptcy filing; it did not know which direction things would go. (Ex. A (Hess Dep.), pp. 97:20–98:2, 151:25–152:7.)

**F. The June 6, 2023, Announcement**

54. About a week before June 6, 2023, the Company considered the possibility of a large-scale reduction in force ("RIF") for the first time. (Ex. A (Hess Dep.), pp. 172:2–11.)

55. The potential RIF was "driven by" the Company's need to request a draw to cover payroll, and that the lender was "pushing [the Company] to file bankruptcy" and "pushing [the Company] to reduce costs to get funding." (Ex. A (Hess Dep.), pp. 173:19–23.)

56. The decision to implement the RIF was discussed among Kvitko, Hess, Keller, and Stuart Kessler of the Clear Thinking Group, and was "driven by . . . the bank and then bank funding." (Ex. A (Hess Dep.), pp. 161:18–21, 174:25–175:6.)

57. On the afternoon of June 6, 2023, Forman Mills' then-Chief Executive Officer, Mike Kvitko, conducted a Zoom meeting with Corporate Office employees

and announced that the Company would be conducting a reduction in force ("RIF"). (Ex. A (Hess Dep.), pp. 93:12–95:23.)

58. Approximately 86 Corporate Office employees, including Del Rossi and Barber, were included. (Ex. A (Hess Dep.) 113:23–114:21; Ex. C (Hess Cert.) ¶ 5; Rosario Cert., ¶ 4.)

59. Approximately 31 employees assigned to the Corporate Office were not included. (Ex. A (Hess Dep.), pp. 115:16–25, 142:12–144:18.)

60. Despite the announcement, at the time, Forman Mills was hopeful that there would not be any permanent employment terminations. (Certification of Keith McDonald, Ex. G., Transcript of Deposition of Tobias Keller, pp. 64:16-25.)

61. Hess testified that Company could not "assure employees of anything" because "there was a possibility that the very next day we could have filed bankruptcy." (Ex. A (Hess Dep.), pp. 182:14–183:3.)

62. The affected employees received a written "Reduction-In-Workforce (RIF) FAQs" document, which stated, among other things, that "the Company has not made any decisions related to a bankruptcy filing," that employees would receive their last paycheck "on the following Friday payroll cycle," and that employees would "remain covered by the Company sponsored health plan effective end date June 30, 2023." (Ex. A (Hess Dep.), pp. 98:25–100:6, 103:3–10; Ex. E (Hess Dep.) Exhibit 5.)

63. The Corporate Office was not closed, and the Company to continue to operate. (Ex. A (Hess Dep.), pp. 144:19–145:12.)

**G. The Sale of Forman Mills and the Recall of All Affected Employees**

64. On June 20, 2023, the stock of Forman Mills was sold to Shoppers World, an unrelated third party. (Ex. C (Hess Cert.) ¶ 6; see also Ex. B (Oddi Dep.), pp. 69:24–70:4.)

65. Shoppers World wanted to acquire Forman Mills as a going concern with its employees, including its Corporate Office employees. (Ex. A (Hess Dep.), pp. 183:4–12; Ex. B (Oddi Dep.), pp. 130:5–17, 171:10–17, 177:19–24.)

66. Immediately upon closing of the sale, all employees who received the June 6, 2023 RIF notification were recalled, including plaintiffs Del Rossi and Barber. (Ex. C (Hess Cert.) ¶ 7; Ex. A (Hess Dep.) 137:2–11.)

67. On June 20, 2023, Del Rossi received a telephone call from Kvitko informing her that Forman Mills was being purchased by Shoppers World. (Ex. F (Declaration of Noell Del Rossi [ECF No. 28-2]) ("Del Rossi Decl."), ¶ 11.)

68. Plaintiffs Del Rossi and Barber were each told to return to work on June 21, 2023. (Del Rossi Decl. ¶¶ 11–12; Ex. G (Declaration of Dawn Barber [ECF No. 28-3]) ("Barber Decl.") ¶¶ 10, 12.)

69. Plaintiffs returned to work on June 21, 2023, without having to reapply. (Del Rossi Decl. ¶ 12; Barber Decl. ¶ 12; Ex. C (Hess Cert.) ¶ 7.)

70. All employees affected by the RIF were offered employment to return to the Company. (Ex. A (Hess Dep.) at 137:2–5.)

**H. Plaintiffs' Uninterrupted Pay and Benefits**

71. Forman Mills pays its employees on a bi-weekly basis. The last pay date before June 6, 2023 was June 9, 2023, for the pay period May 21, 2023 through June 3, 2023. (Ex. D (Hess Decl.), Exs. A–B.)

72. By the time Forman Mills processed its next payroll after the RIF, all affected employees had been retained and paid from June 6, 2023 forward. (Ex. A (Hess Dep.), pp. 187:23–188:6, 192:11–15.)

73. On June 23, 2023, Forman Mills paid Del Rossi her regular wages for the pay period June 4, 2023 through June 17, 2023, consisting of 80.9833 regular hours at $21.3416 per hour, for gross earnings of $1,728.31. (Ex. D (Hess Decl.), Ex. A.)

74. On June 23, 2023, Forman Mills paid Barber her wages for the pay period June 4, 2023 through June 17, 2023, at her regular rate of $17.50 per hour. (Ex. D (Hess Decl.), Ex. B (pay date June 23, 2023.)

75. On July 7, 2023, Forman Mills paid Plaintiffs their wages for the following pay period, June 18, 2023 through July 1, 2023. Ex. D (Hess Decl.), Exs. A–B (pay date July 7, 2023).)

76. Del Rossi and Barber experienced no gap in pay or benefits before, on, or after June 6, 2023, and experienced no loss of seniority. (Ex. C (Hess Cert.) ¶ 8; Ex. D (Hess Decl.), Exs. A–B.)

77. Corporate Office employees enrolled in the Company's health insurance program, including those included in the RIF, had the same health coverage for the entire month of June 2023 that they would have had absent the RIF. (Ex. A (Hess Dep.), pp. 117:19–119:1, 190:16–191:20.)

78. Plaintiffs continued to be paid at the same hourly rates after June 6, 2023: $21.3416 for Del Rossi and $17.50 for Barber. (Ex. C (Hess Cert.), Ex. B (Barber pay records through Mar. 15, 2024).)

**I. Plaintiffs' Subsequent Voluntary Resignations**

79. Del Rossi began maternity leave on December 7, 2023, and remained an employee of Forman Mills during her leave. (Ex. C (Hess Cert.) ¶ 7 n.1.)

80. Del Rossi voluntarily resigned from Forman Mills; her last day of employment was August 8, 2024. (Ex. H (Del Rossi Rog. Ans.) Nos. 1, 5, 7.)

81. Barber voluntarily resigned from Forman Mills; her last day worked was July 31, 2024, and her employment ended on August 2, 2024. (Ex. I (Barber Rog. Ans.) Nos. 1, 5, 7.)

**J. Current Corporate Office Staffing**

82. Of the approximately 86 individuals who received the RIF notice, 35 remain employed by Forman Mills. (Rosario Cert., ¶ 5.)

Dated: October 30, 2026

Respectfully submitted,

*/s/ Anthony A. Mingione*

**BLANK ROME LLP**
*A Pennsylvania LLP*
Jonathan M. Korn
New Jersey Resident Partner
Anthony A. Mingione
Michael R. Darbee
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Tel: (609) 750-2649
Jonathan.Korn@BlankRome.com
Anthony.Mingione@BlankRome.com
Michael.Darbee@BlankRome.com
*Attorneys for Defendant Forman Mills, Inc.*